**IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **No. 02 CR 719-16** |
| v. | ) | **Hon. Thomas M. Durkin** |
| **STEVE LISCANO** | ) | |

**STEVE LISCANO'S MOTION TO REDUCE HIS LIFE SENTENCE
PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AS AMENDED BY
<u>SECTION 603 OF THE FIRST STEP ACT</u>**

> *"The government does not contest Liscano's argument that the sentencing court
> erred in imposing a mandatory life sentence."*[1]

The parties agree that STEVE LISCANO is serving a life sentence that is erroneous.
Mr. Liscano is serving a mandatory life sentence pursuant to 21 U.S.C. § 851, a federal drug
recidivist statute legislatively intended to incapacitate the most serious repeat drug offenders.
The government recently conceded in Mr. Liscano's (ultimately unsuccessful) habeas corpus
proceedings that "neither of the two convictions that were used to enhance Mr. Liscano's
sentence to life qualify as a felony drug offense within the meaning of the federal statute."[2]
Therefore, Mr. Liscano's life sentence is legally erroneous.

---

[1] *Steve R. Liscano v. Warden*, No 19-1531 (7th Cir. April 1, 2020), Government's Response
in Brief of the Respondent Warden at 11(Doc. No. 22).

[2] *See Warden*, No 19-1531 (7th Cir. April 1, 2020), Brief and Required Short Appendix of
Petitioner at 15 (Doc. No. 16); *see also Warden*, No 19-1531 (7th Cir. April 1, 2020),
Government's Response in Brief of the Respondent Warden at 11 (Doc. No. 22) (citing to
Petitioner's Brief at 8-15 and 21-22 and not contesting Mr. Liscano's argument that the

1

Further, Mr. Liscano's life sentence is retaliatory. His decision to exercise his trial rights factored as much (if not more) into the government's enhancement decision as the drug offense itself. The government acknowledged to the sentencing judge that it filed a 851 enhancement against Mr. Liscano because he elected trial:

```
 6          THE COURT:  So you didn't consider an 851 enhancement
 7  as to any defendant until after it became clear that some
 8  defendants would go to trial and others would plead guilty?
 9          MR. BEAUMONT:  Correct, I mean yes.  We ultimately made
10  a decision that if defendants were going to go to trial and they
11  had the appropriate prior felony convictions that we then would
12  file the 851 notice.
13          THE COURT:  Whereas if a defendant did not go to trial,
14  then you wouldn't file the 851 enhancement?
15          MR. BEAUMONT:  If they pled guilty, correct, yes, that's
16  correct.
```

Sent Tr. (Oct. 28, 2003) at 37 (Doc. No. 662). The government also conceded that it did not notify Mr. Liscano in its 851 filing that it would seek a mandatory life sentence against him.[3] Going into his trial, Mr. Liscano believed "the worst I would be looking at if they gave me enhancement would be 20 years, not a minimum of life."[4] Tragically, we now know that was not the case.

The trifecta of government concessions here creates "extraordinary and compelling reasons" that authorize the Court to reduce Mr. Liscano's life sentence pursuant to 18 U.S.C.

---

sentencing court erred in imposing a mandatory life sentence because Mr. Liscano's priors do not qualify as felony drug offenses under federal statute).

[3]     Sent Tr. (Oct. 28, 2003) at 18-19 (Doc. No. 662), attached as Exhibit P.

[4]     Sent. Tr. (Oct. 28, 2003) at 16:3-4 (Doc. 662), Exh. P.

§ 3582(c)(1)(A), as modified by § 603 of the First Step Act of 2018 ("1SA"). Despite his life sentence, Mr. Liscano has found ways to thrive. Mr. Liscano's rehabilitation while incarcerated is compelling evidence that he poses no threat of danger to the community, if released. While incarcerated, Mr. Liscano has transformed into an artistic skilled worker who has had a remarkable impact on BOP facilities and officials.

> Inmate Liscano has worked above his level of grade 1. Liscano has saved the institution money on several occasions. . . I believe that Mr. Liscano's hard work ethic and positive attitude will continue to guide him in being a productive citizen in society.[5]

For these reasons, and as further explained below, Defendant, STEVE LISCANO, by his counsel TALISHA GRIFFIN and MIANGEL CODY, respectfully requests this Court to reduce his life sentence to 210 months on Count 1, pursuant 18 U.S.C. § 3582(c)(1)(A) as amended by § 603 of the 1SA. A total sentence of 210 months' imprisonment is sufficient, but not greater than necessary for this particular defendant, on these particular facts, in this particular case.

## I.    THE FACTS

### A.  Steve Liscano's Childhood and Road to a Life Sentence

Childhood alcohol and drug addiction affects brain development and life choices. Steve Liscano's own teen drug use directly contributed to his life sentence. According to his Presentence Investigation Report (PSR), Steve took his first hit of cocaine as a teenager and snorted the drug several times per week thereafter.[6] User-related state convictions soon

---

[5]    *See* BOP Work Performance Rating, Exh. K (commenting on Mr. Liscano's work ethic); Illinois Unit Correctional Counselor T. Meyers, Exh. G (providing an assessment that Mr. Liscano would be a productive citizen if released).

[6]    Corrected PSR ("PSR") at ¶ 575-78.

followed.[7] In 1995, just after his 18th birthday, he was arrested for having a baggie of cocaine

in his pocket.[8]  The PSR indicates the following:

| 6/8/95<br>(Age: 18) | Possession Of A Controlled<br>Substance,<br>Kane Co. Circuit Ct.,<br>Dkt.# 95 CF 1201 | 7/31/95: Pled Guilty/<br>Found Guilty,<br>Sentenced To 2 Years<br>IDOC;<br>12/8/95: Paroled;<br>10/29/96: Discharged | §4A1.1(a) | 3 |

The above disposition was obtained from the Kane County Circuit Court electronic record.  As of
this writing, the Aurora, Illinois, Police Department has not responded to the undersigned's request
for the arrest report for the above offense.  According to the State's Attorney's Statement, the
defendant possessed a "baggie" of cocaine in his pocket.

PSR at ¶ 310-315.

Possessing a small baggie of cocaine was Mr. Liscano's first adult conviction.[9] He was

sentenced to two years in state prison, but he was later paroled after only serving four

months.[10] He successfully completed parole without incident.[11] He received no drug treatment

in prison or on parole.[12] Sadly, Mr. Liscano continued to use cocaine. At age 23, he was

arrested after Kane County Sheriff's deputies searched his home and found cocaine residue

on a razor blade in his bedroom.[13] On June 20, 2001, Mr. Liscano pleaded guilty to possessing

a razor blade with cocaine residue and was sentenced to 18 months in prison, but he was later

---

[7]      PSR at ¶  310-11.
[8]      PSR at ¶ 310-11, 315.
[9]      PSR at ¶ 300-311.
[10]     PSR at ¶ 310-311.
[11]     PSR at ¶ 310-311.
[12]     PSR at ¶ 310-311.
[13]     *See* Guilty Plea Transcript for Steven Liscano, No. 00 CF 1533 (June 20, 2001),
Exhibit A at pg 6.

paroled after serving three months.[14] Again, he received no meaningful drug treatment during his second imprisonment.[15]

### B. The Juan Corral Conspiracy

> *I was very naive in the beginning. I thought I had found a group of friends . . . In my family there was barely enough food to go around. I thought that selling drugs for the gang was the way out of having nothing. I thought it was an opportunity to be a provider for my family. Beginning at age 14, being the provider was the expectation placed on me. I wanted more than just milk, butter, and cheese for my family to eat. I was tired of spending nights with just candles burning for light or using the stove as a heater.*

–Statement of Steve Liscano[16]

For young Steve Liscano, poverty was not an abstract concept. It was no food in the refrigerator, forgoing meals so his younger sisters could eat, and at times no heat or electricity in the home. When Steve was 15 years old, he met Juan Corral, a "major drug trafficker" and ranking Latin King on Aurora's east side.[17] Corral was the central nexus of a narcotics "business," in which he maintained control over all aspects of his drug sale and distribution operation—from distributing drugs to establishing and financing safe houses, sorting and

---

[14]   PSR at ¶ 385-86.

[15]   PSR at ¶ 385-86. A detailed chart of Mr. Liscano's adult criminal history is attached as Exhibit B.

[16]   In 2019, Mr. Liscano was selected to be featured in a national public education campaign about the federal Three Strikes Drug Law. That digital storytelling project has won a number of national awards, including a prestigious Webby Award for 2020 Best Internet Homepage. The Court can listen to a recording of Mr. Liscano telling his story at https://www.thirdstrikecampaign.com/home/steve-liscano.

[17]   *United States v. Corral*, No. 02-719 (N.D. Ill. July 23, 2002), Complaint at 4 (Doc. No. 1).

repackaging cocaine for resale, arranging deliveries to customers, managing the quality of his product, and retaining firearms for the protection of his stock and sale proceeds.[18]

Juan Corral was the undisputed "hub" of his drug operation, and Steve Liscano was a "spoke," who was groomed even as a young teenager to act as a subordinate customer-distributor.[19] Steve's involvement in the drug conspiracy was limited to his interactions with Corral. Steve was not aware of the identities of Corral's other customers; he was not aware of the location(s) where Corral stored his cocaine; he never explicitly agreed to assist Corral in selling cocaine to others; and his participation was not integral to the continuation of Corral's cocaine operation.[20]

## C. The Federal Prosecution

In November 2002, a Northern District of Illinois grand jury returned an indictment charging Mr. Liscano and ten others with conspiracy to possess with intent to distribute more than five kilograms of mixture and substances containing cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. [21]

Shortly before trial, the government filed an information pursuant to 21 U.S.C. § 851 identifying three Illinois state convictions purportedly justifying an enhancement of Mr.

---

[18]     *Id.* at 9, 11; *Corral*, No. 02-719 (N.D. Ill. July 23, 2002), Plea Agreement for Juan Corral at 4-5 (Doc. No. 271); *United States v. Bustamante*, 493 F.3d 879, 882-83 (7th Cir. 2007).
[19]     *Bustamante*, 493 F.3d at 885.
[20]     *Liscano v. United States*, No. 09-1347, 2011 WL 2938103 at *3–4 (N.D. Ill. July 18, 2011) (citing Transcript of Record at 29:2–35:4, *Corral*, No. 02-719 (N.D. Ill. Nov. 19, 2005)).
[21]     PSR at pg 1; *see also United States v. Liscano*, No. 02 CR 719 (N.D. Ill. May 21, 2003) Indictment (Doc. No. 131).

Liscano's sentence.[22] The government subsequently conceded, however, that one of those state convictions was a misdemeanor and could not be used to enhance Mr. Liscano's sentence.[23] That left two predicate state convictions: one for possessing a baggie of cocaine and one for a cocaine-laced razor blade local police found in his bedroom.[24]

In June 2003, a jury found Mr. Liscano guilty.[25]

At Mr. Liscano's sentencing, which was continued multiple times and took place over a span of more than two years (October 2003-November 2005), the government acknowledged that it filed the § 851 information against Mr. Liscano because he exercised his trial rights rather than pleading guilty.

> MR. BEAUMONT: When those draft plea agreements were sent out, the 851 enhancements were not discussed in my office. After the fact when we narrowed down the defendants and we were deciding people going to trial, that's when we began discussing the 851 notices and at that point **we made a decision that if people were to go to trial if they had the appropriate prior convictions, we would file the notices.**
>
> THE COURT: So you didn't consider an 851 enhancement as to any defendant until after it became clear that some defendants would go to trial and others would plead guilty?
>
> MR. BEAUMONT: Correct, I mean yes. We ultimately made a decision that if defendants were going to go to trial and they had the appropriate prior felony convictions that we then would file the 851 notice.

---

22      *United States v. Liscano*, No. 02 CR 719 (N.D. Ill. May 21, 2003), Information and Notice of Prior Convictions by Liscano (Doc. No. 281).

23      Sent. Tr. (Oct. 28, 2003) at 21 (Doc. No. 662), Exh. P.

24      *Id.* at 21-25.

25      PSR at pg  2.

Sent. Tr. (Oct. 28, 2003) at 36-37, Exh. P (emphasis added).

On November 30, 2005, Mr. Liscano finally received his sentence.[26] The judge limited his responsibility to 12 to 13 kilograms of cocaine which, when combined with his criminal history category of VI, resulted in an applicable guideline range of 210 to 262 months' incarceration.[27] However, the 851 enhancement required a lifetime penalty. Judge Holderman noted that the two prior convictions were "not what I would consider to be extremely aggravated offenses of involvement with controlled substances. Unfortunately, that is not the criterion."[28]

Mr. Liscano appealed his conviction and sentence, and the Seventh Circuit Court of Appeals affirmed both on July 16, 2007.[29] In March 2009, asserting ineffective assistance of counsel, Mr. Liscano moved pursuant to 28 U.S.C. § 2225 to vacate his sentence.[30] The district court denied Mr. Liscano's § 2255 motion on July 18, 2011.[31] Mr. Liscano appealed, and the Seventh Circuit denied a certificate of appealability.[32]

---

[26]     Sent. Tr. (Nov. 30, 2005) at 172, attached as Exh. Q.

[27]     The Seventh Circuit subsequently referred to "at least sixteen kilograms of cocaine" that Corral fronted to Steve Liscano during Liscano's participation in the conspiracy. *United States v. Bustamante*, 493 F.3d 879, 882 (7th Cir. 2007). The appellate Court's reference is inconsistent with the district court's drug quantity finding that limited Liscano's responsibility to 12 to 13 kilograms of cocaine. Sent. Tr. (Nov. 29, 2005) at 118:9-10 (Doc. No. 558). Exh. R

[28]     Sent. Tr. (Oct. 28, 2003) at 38:21-22 (Doc. No. 662), Exh. P.

[29]     *United States v. Bustamante*, 493 F.3d 879, 893 (7th Cir. 2007).

[30]     *United States v. Liscano*, No. 09 CV 1347 (N.D. Ill. March 3, 2009) (Doc. No. 1).

[31]     *U.S. v. Liscano*, No. 09 C 1347 (N.D. Ill. July 18, 2011), Memorandum Opinion (Doc. No. 22).

[32]     *Liscano*, No. 09 C 1347 (N.D. Ill. July 18, 2011), Certified Copy of Order (Doc. No. 42).

In October 2017, Mr. Liscano filed a *pro se* petition under 28 U.S.C. § 2241.[33] That habeas petition was filed in the United States District Court for the Central District of Illinois, where Liscano was confined at Pekin FCI prison. Relying on *Mathis v. United States*, – U.S. –, 136 S. Ct. 2243 (2016), Mr. Liscano contended that "the Illinois state controlled substance offense conviction does not qualify as a predicate offense," and requested that he be "resentenced without the 851 Notice."[34] The district court denied habeas relief on procedural grounds.[35] The court did not address the substantive merits of Mr. Liscano's habeas claim, and it dismissed his petition and subsequent motion for reconsideration.[36]

On March 22, 2019, Mr. Liscano filed a notice of appeal.[37] Mr. Liscano argued the sentencing judge erred when it used his two Illinois drug priors as predicates for his § 851 life enhancement. Under *Mathis*, Mr. Liscano should have faced a ten-year mandatory minimum rather than a life sentence.[38] He further maintained that his challenge to the sentencing court's error was previously foreclosed and became available to him only after the Supreme Court's *Mathis* decision in 2016.[39] Mr. Liscano contended, his life sentence "is the result of legal error 'grave enough to be deemed a miscarriage of justice.'"[40]

---

[33]    *Steven R. Liscano v. Tom Watson*, No. 1:17-cv-01449-SEM-TSH (C.D. Ill. October 6, 2017), Petition for Writ of Habeas Corpus (Doc. No. 1).

[34]    *Id.* at 7, 9.

[35]    *Watson*, No. 1:17-cv-01449-SEM-TSH (C.D. Ill. October 6, 2017), Order at 6-10 (Doc. No. 16).

[36]    *Id.* at 10; *Watson*, No. 1:17-cv-01449-SEM-TSH (C.D. Ill. October 6, 2017), Order at 1, 6 (Doc. No. 20).

[37]    *Watson*, No. 1:17-cv-01449-SEM-TSH (C.D. Ill. October 6, 2017), Notice of Appeal (Doc. No. 21).

[38]    *Steven R. Liscano v. F. Entzel*, No. 19-1531 (7th Cir. Dec. 27, 2019), Appellant's Brief at 7 (Doc. No. 16).

[39]    *Id.* at 7-8.

[40]    *Id.* at 21.

The government agreed with Mr. Liscano's argument that neither of his Illinois convictions used to enhance his sentence qualified as a "felony drug offense" as defined in 21 U.S.C. § 802(44).[41] Therefore, Mr. Liscano's life sentence is erroneous.[42] The government, however, argued that Mr. Liscano was procedurally barred from § 2241 relief because he should have asserted his claim on direct appeal or in his pre-*Mathis* § 2255 proceedings.[43]

On March 8, 2021, the Seventh Circuit Court of Appeals issued a judgment affirmed, notwithstanding the government's admission that Liscano's life sentence was erroneously imposed.[44] In a two-page unpublished order, the appellate court concluded Liscano procedurally defaulted when he failed to assert the claim in his appeal or his uncounseled *pro se* § 2255 petition.[45]

## II.    THE LAW

### A.  21 U.S.C. § 851 Purpose and Policy

#### 1.  The Legislative Purpose of 851 Enhancements

Title 21 U.S.C. § 851 was intended to apply only to "the hardened, professional drug traffickers who should face recidivism enhancements upon conviction."[46] Section 851's legislatively intended purpose and its practical use diverged over time, however. Whether the government discretionarily files an 851 enhancement against an eligible defendant is "stunningly arbitrary," but often a function of geographical coincidence, racial disparities, the

---

[41]    *Entzel*, No. 19-1531 (7th Cir. Dec. 27, 2019), Appellee's Brief at  11 (Doc. No. 22).
[42]    *Id.*
[43]    *Id.*
[44]    *Entzel*, No. 19-1531 (7th Cir. Dec. 27, 2019), Final Judgment (Doc. No. 37).
[45]    *Id.*
[46]    *United States v. Kupa,* 976 F. Supp. 2d 417, 419 (E.D.N.Y. 2013).

decision to cooperate, or (as in this case) the decision to exercise trial rights.[47] Criticizing the disparate prosecutorial use of 851 enhancements, one federal judge noted: "For unknown and unknowable reasons, federal prosecutors have been applying massive numbers of § 851 enhancements in many districts and not in others."[48]

Second, prosecutors have filed 851 enhancements to coerce drug defendants to plead guilty; and prosecutors have refused to withdraw 851 enhancements against defendants who exercised their right to trial.[49] The court in *United States v. Young*, 960 F. Supp. 2d 881 (N.D. Iowa 2013) lamented that 851 enhancements are "shrouded in such complete secrecy that they make the proceedings of the former English Court of Star Chamber appear to be a model of criminal justice transparency."[50] The chorus of criticism of 851-enhanced mandatory minimums became so loud that even Former Attorney General ("AG") Eric Holder acknowledged that inflexible mandatory minimums "generate unfairly long sentences," "breed disrespect for the system," "do not serve public safety," "[destabilize] particular communities, largely poor and of color," and "are ultimately counterproductive."[51]

---

[47]  *United States v. Young*, 960 F. Supp. 2d 881, 903 (N.D. Iowa 2013) (summarizing the disparity as "stunningly arbitrary"); *see also* U.S.S.C., 2011 Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System, Chapter 8  253, 255 (reporting a "lack of uniformity" in the application of § 851 enhancements).

[48]  *United States v. Young*, 960 F. Supp. 2d 881, 903 (N.D. Iowa 2013).

[49]  In *United States v. Kupa*, 976 F. Supp. 2d 417, 420 (E.D.N.Y. 2013) a federal district judge noted: "prosecutors routinely threaten ultra-harsh, enhanced mandatory sentences that no one – not even the prosecutors themselves – thinks are appropriate. And to demonstrate to defendants generally that those threats are sincere, prosecutors insist on the imposition of the unjust punishments when the threatened defendants refuse to plead guilty." (emphasis in original).

[50]  *Young*, 960 F. Supp. 2d at 903 (N.D. Iowa 2013).

[51]  Attorney General Eric Holder, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013), available at

### 2. DOJ Policy on Charging and Sentencing

On May 19, 2010, then former AG Holder announced the Department Policy on Charging and Sentencing.[52] Former AG Holder reaffirmed guiding principles that prosecutors should make individualized assessments as "equal justice depends on individualized justice."[53] Long standing principles dictate that prosecutors should ordinarily charge "the most serious offense that is consistent with the nature of the defendant's conduct. . . "[54] That determination however must always be made in the context of "an individualized assessment of the extent to which particular charges fit the specific circumstances of the case . . . [and] the charges should fairly represent the defendant's criminal conduct. . . [T]he decision whether to seek a statutory sentencing enhancement should be guided by these same principles."[55] "All but the most routine indictments should be accompanied by a prosecution memorandum that identifies the charging options supported by the evidence and the law and explains the charging decision therein."[56] Current DOJ policy, therefore, disfavors the use of 851 enhancements as a means of retaliation.

---

www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html (last accessed March 15, 2021).

[52]      Former Attorney General Eric Holder, Jr., Memorandum to all Federal Prosecutors on Department Policy on Charging and Sentencing (May 19, 2010) https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/holder-memo-charging-sentencing.pdf.

[53]      *Id.* at 1.

[54]      *Id.* at 2.

[55]      *Id.* at 2.

[56]      *Id.* at 2.

DOJ policy, under the Biden Administration, has re-adopted former AG Holder's May 19, 2010, Policy on Charging and Sentencing.[57]

## B. The First Step Act

### 1. Section 401 of the First Step Act Amended Qualifying Prior Convictions for a § 851 Enhancement.

Section 401(a)(2)(A)(i) of the 1SA amended 21 U.S.C. § 841(b)(1) by requiring a prior conviction for a "serious drug felony" to trigger a 15-year mandatory minimum for a conviction under 21 U.S.C. § 841(b)(1)(A).[58] A serious drug felony is defined as an offense for which the offender served a term of imprisonment of more than 12 months, and the offender's release from any term of imprisonment that was within 15 years of the commencement of the instance offense.[59] Section 401 also eliminated the mandatory minimum life sentence for two prior convictions under 841(b)(1)(A).[60] Today, a person is only subject to a 25-year mandatory minimum if the government pursues an 851 enhancement based upon two or more "serious drug felony" convictions.[61] Section 401, however, was not made retroactive.

### 2. Section 603 of the First Step Act Amended 18 U.S.C. § 3582(c)(1)(A) Compassionate Release.

Section 603 of the 1SA amended 18 U.S.C. § 3582(c)(1)(A) and allows courts to consider compassionate release motions by defendants. The district court may entertain a defendant's compassionate release motion, so long as he or she has exhausted all BOP

---

[57]    *See* Memorandum for All Federal Prosecutors: Interim Guidance on Prosecutorial Discretion, Charging, and Sentencing (Jan. 29, 2021) https://www.justice.gov/ag/page/file/1362411/download.
[58]    First Step Act 2018, Pub. L. No. 115-391, § 401(a)(2)(A)(i).
[59]    *Id.* at § 401(a)(1)(57) (amending 21 U.S.C. § 802).
[60]    First Step Act § 401(a)(2)(A)(ii).
[61]    *Id.*

administrative remedies or if the Warden fails to respond within the 30-day statutory period.[62] The First Step Act applies the same statutory requirements to a defendant's motion for compassionate release as previously applied, and still apply, to motions by the Director: "extraordinary and compelling reasons" must warrant the reduction, the court must consider the § 3553(a) factors, and the reduction must be "consistent" with any "applicable" policy statements issued by the Sentencing Commission.[63]

As the Seventh Circuit Court of Appeals acknowledged in *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020), the "Sentencing Commission has not yet issued a policy statement 'applicable' to [prisoner's] request" and "the Guideline Manual lacks any applicable policy statement." The policy statement and application notes provide a working definition/analysis of extraordinary and compelling reasons and district judges should let that analysis "guide [their] discretion without being conclusive."[64] Until the Commission's guidelines and policy statements are revised, "the Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release."[65] Therefore, "[d]istrict judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."[66]

---

[62] First Step Act 2018, Pub. L. No. 115-391, § 603(b)(1). On March 29, 2021, Mr. Liscano submitted a request for compassionate release to the Warden of his facility. Exh. S. On April 3, 2021, Mr. Liscano filed an amended request. Exh. T. On May 4, 2021, the Warden responded to Mr. Liscano's request, past the 30-day deadline. Therefore, Mr. Liscano is eligible for relief under § 3582(c)(1)(A).

[63] 18 U.S.C. § 3582(c)(1)(A)(i).

[64] *Gunn*, 980 F.3d at 1180 (7th Cir. 2020).

[65] *Id.* at 1181.

[66] *Id.*

## III.    DISCUSSION

There are three unique government concessions that create extraordinary reasons for a sentence reduction under § 3582(c)(1)(A) for Mr. Liscano's life sentence: (1) the government conceded that the trial court erred in imposing a life sentence; (2) the government conceded that it retaliated against Mr. Liscano for exercising his trial right by filing the 851 enhancement; and (3) the government conceded that it did not inform Mr. Liscano prior to trial that its § 851 enhancement required a life sentence upon conviction.   In addition to these three government concessions, there are several other factors that further support a sentence reduction. Mr. Liscano addresses each in turn.

### A. The Parties Agree that Mr. Liscano's Life Sentence is Erroneous.

As time has passed and our laws have changed, so too has the government's position on Mr. Liscano's life sentence. Recently on collateral appeal, the government agreed with Mr. Liscano that his two prior convictions are not considered felony drug offenses under the federal statute.[67] Therefore, the government "does not contest . . . that the sentencing court erred in imposing a mandatory life sentence."[68]

The two predicates relied on by the government to enhance Mr. Liscano's mandatory minimum to life were convictions in violation of Illinois statute § 570/402(c).[69] Illinois § 402(c) is overbroad -- meaning the state statute criminalizes a broader swath of conduct than the relevant federal statute.[70] Mr. Liscano argued that under *Mathis*, the priors used to enhance his

---

[67]    *Steve R. Liscano v. Warden*, No 19-1531 (7th Cir. April 1, 2020) (Doc. No. 16) at 15.
[68]    *Steve R. Liscano v. Warden*, No 19-1531 (7th Cir. April 1, 2020) (Doc. No. 22) at 11.
[69]    *Steve R. Liscano v. Warden*, No 19-1531 (7th Cir. April 1, 2020) (Doc. No. 16) at 3.
[70]    *Id.* at 14-15.

sentence do not qualify as felony drug offenses under federal law.[71] The government agreed with Mr. Liscano's argument and "[did] not contest Liscano's argument that the sentencing court erred in imposing a mandatory life sentence."[72] The government, however, argued Liscano was procedurally barred from raising the issue now.[73] The district court and Seventh Circuit agreed.

Although Mr. Liscano is not challenging the legality of his sentence, it is important to highlight the government's concession that Mr. Liscano's current life sentence is legally erroneous—as it can be considered in this Court's analysis of whether extraordinary and compelling reasons exist for a sentence reduction. The concession is extraordinary because the government is now admitting Mr. Liscano's life sentence is unusual—beyond what is customary.

**B. The Government Conceded that it Sought a Mandatory Life Sentence Because Mr. Liscano Exercised His Right to Trial.**

In 2005, the government levied a tax on Steve Liscano for his choice to exercise one of the most fundamental rights etched in the foundation of American law. At sentencing, the prosecutor admitted: "[W]e made a decision that if people were to go to trial if they had the appropriate prior convictions, we would file the notices." Sent. Tr. (Oct. 28, 2003) at 37.

The use of an 851 enhancement as a trial tax is inconsistent with DOJ policy.[74] The record here supports an 851 enhancement was used solely against Mr. Liscano because he

---

[71]    *Warden*, No 19-1531 (7th Cir. April 1, 2020) (Doc. No. 16) at 15.

[72]    *Steve R. Liscano v. Warden*, No 19-1531 (7th Cir. April 1, 2020) (Doc. No. 22) at 11.

[73]    *Id.*

[74]    *See* Memorandum for All Federal Prosecutors: Interim Guidance on Prosecutorial Discretion, Charging, and Sentencing (Jan. 29, 2021)

exercised his right to trial. Such a retaliatory use of a recidivist statute designed to punish the most severe, repeat offenders is extraordinary.

### C. The Government Conceded that it Did Not Fully Disclose to Mr. Liscano that it Would Seek a Mandatory Life Sentence.

After trial, the government wielded its power and it became clear for the first time that the government wanted Steve Liscano to die behind bars because of his minor drug-addict convictions.[75] The government's 851 notice specified the prior convictions it would use to seek an "increased punishment" but it did not specify which increased punishment Mr. Liscano would be subject to.[76] To Mr. Licano's understanding, "the worst I would be looking at if they gave me enhancement would be 20 years, not a minimum of life."[77]

Although Mr. Liscano did not enter into a conditional plea with the government, specific notice that the government sought a life sentence based on his prior convictions deprived him of the opportunity to make an informed decision on whether to proceed to trial or plead guilty.[78]

---

https://www.justice.gov/ag/page/file/1362411/download; Former Attorney General Eric Holder, Jr., Memorandum to all Federal Prosecutors on Department Policy on Charging and Sentencing (May 19, 2010) https://www.justice.gov/sites/default/files/oip/legacy/2014/07/23/holder-memo-charging-sentencing.pdf.

[75]  Sent. Tr. (Oct. 28, 2003) at 26:10-16 (Doc. No. 662), Exh. P.

[76]  *Liscano*, No. 02 CR 719-16, Information and Notice of Prior Convictions (Doc. No. 281-2).

[77]  Sent. Tr. (Oct. 28, 2003) at 16:3-4 (Doc. 662), Exh. P.

[78]  The government is required to disclose the mandatory minimum and maximum sentence an individual would be subject to in a plea agreement. U.S.C.S. Fed. Crim. Proc. R. 11(b). The reason is because "without knowledge of the minimum sentence" an individual faces, he or she "cannot make a knowing and voluntary plea." *Edwards*, 842 F. Supp. at 361 (N.D. Ind. Decc. 2, 1993). Mr. Liscano contends the same is true for notice of the specific enhanced penalty being sought under an 851 enhancement.

The trifecta of government concessions here demonstrate an extraordinary and compelling reason for a sentence reduction on Mr. Liscano life sentence.

**D. There are Additional Factors that Further Demonstrate "Extraordinary and Compelling" Reasons for a Sentence Reduction.**

There are five additional factors that demonstrate extraordinary and compelling reasons for a sentence reduction. First, the priors relied on to enhance Mr. Liscano's sentence do not qualify as serious drug felonies under 21 U.S.C. § 841 as amended by § 401 of the 1SA. Thus, if sentenced today, Mr. Liscano would only be subject to a mandatory minimum of 10 years if he proceeded to trial. As former Deputy Attorney General James Cole has said:

> For our criminal justice system to be effective, it needs to not only be fair; but it also must be perceived as being fair. Older, stringent punishments that are out of line with sentences imposed under today's laws erode people's confidence in our criminal justice system.

April 23, 2014, Press Conference Announcing the New Clemency Initiative. Second, the evidence of Mr. Liscano's rehabilitation while incarcerated is extraordinary. Third, Mr. Liscano's family circumstances are extraordinary. Fourth, Mr. Liscano has served the high end of his current guideline sentencing range. Fifth, Mr. Liscano's risk of contracting and experiencing severe symptoms of COVID-19 and its variants while incarcerated is concerning. These five facts, combined with the trifecta of government concessions, further support a finding that Mr. Liscano has demonstrated extraordinary and compelling reasons warranting a sentence reduction.

1. **A *Sentence Disparity* Can Demonstrate Extraordinary and Compelling Reasons for a Sentence Reduction Under § 3582(c)(1)(A).**

Section 401 of the 1SA amended the qualifying predicates necessary to enhance a sentence under 21 U.S.C. § 841. Today, if Mr. Liscano was charged for the exact same conduct with the same criminal history, then he would not be subject to an enhancement under § 851 because he does not have a prior serious drug felony. A serious drug felony is defined as an offense for which the offender served a term of imprisonment of more than 12 months, and the offender's release from any term of imprisonment that was within 15 years of the commencement of the instance offense.[79] The prior convictions relied on by the government did not result in a sentence of more than 12 months incarceration.[80]

Even if Liscano's prior convictions were qualifying serious drug felonies, the resulting enhancement penalty would be far less today. The First Step Act reduced the mandatory minimum from life to 25 years for a second or subsequent drug conviction under 21 U.S.C. § 841(b)(1)(A).[81] Seventh Circuit precedent supports a finding that sentencing disparities are proper factors that can be considered extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A).[82]

In *United States v. Haynes*, No. 20-3241, 2020 U.S. App. LEXIS 41462, at *1 (7th Cir. Dec. 18, 2020) the Seventh Circuit vacated the district court's finding that a sentence disparity could not be considered an extraordinary and compelling reason for a sentence reduction

---

[79]    *Id.* at § 401(a)(1)(57) (amending 21 U.S.C. § 802).
[80]    PSR at pg 12, 16.
[81]    21 U.S.C. § 841(b)(1)
[82]    *Gunn*, 980 F.3d at 1181 (7th Cir. 2020); *United States v. Haynes*, 2020 U.S. App. LEXIS 41462 (7th Cir. Dec. 18, 2020).

under § 3582(c)(1)(A) "in light of [the C]ourt's decision in *United States v. Gunn*, No. 20-1959."[83] Haynes sought compassionate release based on: (1) the *sentence disparity* in his post-1SA 924(c) sentences, and (2) three *defective sentences* that the government conceded were invalid.[84] The district court denied Haynes' request because he did not seek a sentence reduction on grounds enumerated in the Application Notes.[85]

On remand, the district court found Haynes *sentence disparity* and *defective sentences* were extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(a).[86] Specifically, the court found that three of the § 924(c) convictions were invalid due to a charging error and the 1SA abolished the sentence-stacking provision responsible for Haynes 105-year sentence.[87] Admittedly, Haynes would only face a mandatory minimum of 30 years for the § 924(c) convictions if properly charged and convicted today.[88] "The combination of these factors, he argues, constitute extraordinary and compelling reasons warranting a sentence reduction under 3582(c)(1)(A)."[89]

This district's Chief Justice has also found sentence disparities can demonstrate extraordinary and compelling reasons for a sentence reduction under § 3582(c)(1)(A). In *United States v. Lawrence*, No. 02 CR 200-1, at 1 (N.D. Ill. Jan. 8, 2021) Lawrence received a 360-month

---

[83]     Attached as Exhibit O (emphasis added).

[84]     *United States v. Haynes*, No. 4:96-cr-40034, at *4 (C.D. Ill. Nov. 12, 2020) (Doc. No. 159). Haynes was convicted of three counts of robbery in violation of 18 U.S.C. § 1951, three counts of interstate travel in aid of racketeering in violation of 18 U.S.C. § 1952, and six counts of carrying a firearm in violation of § 924(c). *Id.* at 1.

[85]     *Id.* at 4.

[86]     *United States v. Haynes*, No. 4:96-car-40034, 2021 U.S. Dist. LEXIS 21964, at *16 (C.D. Ill. Feb. 4, 2021) (emphasis added).

[87]     *Id.* at *17.

[88]     *Id.* at *19.

[89]     *Id.* at *4.

consecutive sentence for two § 924(c) convictions—60 months on the first, and 300 months on the second.[90] Lawrence sought a sentence reduction on his stacked 300-month sentence based on the post-1SA sentence disparity.[91] The court found the gross sentence disparity in Lawrence's potential post-1SA 924(c) sentence and his pre-1SA sentence constitute an extraordinary and compelling reason for a sentence reduction under § 3582(c)(1)(A).[92]

Although the majority of case precedent centers on the sentence disparity between pre-1SA and post-1SA 924(c) sentences, the underlying notion--the gross disparity between the sentence a person received pre-1SA and what they would receive post-1SA--is a factor that can be considered extraordinary and compelling.[93] As the district court pointed out in *Haynes* on remand, "[h]ad the Seventh Circuit believed sentencing disparities such as Defendant's are--as a matter of law--categorically improper predicates for motions under § 3582(c)(1)(A)(i), reversal and remand would have been an odd choice. And a decision by this Court making such a finding in this context would be odder still."[94]

Other circuit courts have also found sentence disparities constitute extraordinary and compelling reasons under § 3582(c)(1)(A). As the Fourth Circuit explained,

> We think courts legitimately may consider, under the "extraordinary and compelling reasons" inquiry, that defendants are serving sentences that Congress itself views as dramatically longer than necessary or fair.

---

[90]    Attached as Exh. M.
[91]    Exh. M at 2.
[92]    *Id.* at 5.
[93]    *Haynes*, 2021 U.S. Dist. LEXIS 21964, at *9-10.
[94]    *Id.* at *15-16.

*United States v. MCoy*, 981 F.3d 271, 285-86 (4th Cir. 2020).[95]

For Mr. Liscano's prior state drug-addict convictions and his non-leading role in the Corral conspiracy, he faced one of the most severe recidivist penalties. If Mr. Liscano was sentenced today, then he would only be subject to a 10-year mandatory minimum sentence. Therefore, a gross disparity exists between the sentence Mr. Liscano received pre-1SA and what he would receive post-1SA.

### 2. Mr. Liscano's Sentence Disparity Coupled with the Evidence of His Rehabilitation is Also Extraordinary.

In addition to a sentence disparity, evidence of rehabilitation can also demonstrate extraordinary and compelling reasons for a sentence reduction.[96] In *United States v. Austin*, 2020 U.S. Dist. LEXIS 221125, at * 11 (N.D. Ill. Nov. 25, 2020), the district court found the sentence disparity created by Congress' change to § 924(c)'s stacking provisions and the defendants record of rehabilitation constitute extraordinary and compelling reasons for a sentence reduction. Both defendants were found guilty of two counts of armed robbery and two counts of using a firearm during and in relation to a crime of violence under § 924(c).[97]

---

[95]     *See also U.S. v. Clark*, No. 11-CR-30-2-JPS, 2020 U.S. Dist. LEXIS 130237, at *6, 2020 WL 4260824, at *3 (E.D. Wi. July 23, 2020); *United States v. Almontes*, No. 3:05-cr-58, 2020 WL 1812713, at *8 (D. Conn. Apr. 9, 2020) ("[C]ourts have considered intervening changes in law as factors contributing to an 'extraordinary and compelling' reason for a sentence reduction under section 3582(c)(1)(A)."); *United States v. Maumau*, No. 2:08-Cr-00758-TC-11, 2020 U.S. Dist. LEXIS 28392, 2020 WL 806121, at *7 (D. Utah Feb. 18, 2020); *United States v. Urkevich.* No. 8:03CR37, 2019 U.S. Dist. LEXIS 197408, at *8-9, 2019 WL 6037391 (D. Neb. Nov. 14, 2019).
[96]     *Lawrence*, No. 02 CR 200-1, at *5 (N.D. Ill. Jan. 8, 2021) (Doc. No. 1950) (finding the gross sentence disparity and Lawerence's rehabilitation demonstrate extraordinary and compelling reasons that warrant a sentence reduction); *United States v. Austin*, No. 06 CR 50055-(1), 2020 U.S. Dist. LEXIS 221125, at * 11 (N.D. Ill. Nov. 25, 2020).
[97]     *Austin*, 2020 U.S. Dist. LEXIS 221125, at * 1-2 (N.D. Ill. Nov. 25, 2020).

Both defendants were sentenced to an aggregate sentence of 684 months' imprisonment—300 months on the robbery charges, consecutive to 84 months on the first 924(c) convictions and 300 months on the second.[98] The court found the fact that Congress did not make an amended statute retroactive "does not mean that the court may not or should not consider the effect of a radically changed sentence for purposes of applying § 3582(c)(1)(A)."[99] Further, both defendants' record of rehabilitation while in prison showed their thinking and behavior were different, and their current state prepared them for a life outside of prison. [100]

Similarly, in *United States v. Rollins*, No. 99 CR 771-1, 2021 U.S. Dist. LEXIS 49514, at *3, 12-13, 2021 WL 1020998, at *6 (N.D. Ill. March 17, 2021), the court reduced Rollin's life sentence because of the sheer and unusual length of his 106 ½ year sentence and his record of rehabilitation while incarcerated. The court found those two factors qualified as "reasons that are beyond what is usual, customary, or regular—that is, reasons that are "extraordinary" within the meaning of 3582(c)(1)(A)."[101] The court explained,

> [G]iven the plain meaning of the term "extraordinary," it is significant that this particular confluence of events—four stacked 924(c) charges for a first-time offender who exercised his constitutional right to put the Government to its proof at trial—is highly unusual. . . . [A] de facto life sentence far exceeds appropriate punishment.

---

[98]    *Id.* at *2.

[99]    *Id.* at *9.

[100]   *Id.* at *14.

[101]   *Rollins*, 2021 U.S. Dist. LEXIS 49514, at *17 (N.D. Ill. March 17, 2021).

*Rollins*, 2021 U.S. Dist. LEXIS 49514, at *9, 14 (N.D. Ill. March 17, 2021). The highly uncommon, arguably excessive, sentence coupled with Rollin's astonishing record of rehabilitation were found to be extraordinary for the purposes of 3582(c)(1)(A). [102]

Here, Mr. Liscano's evidence of rehabilitation and the gross disparity between his pre-1SA and post-1SA sentence further demonstrates extraordinary and compelling reasons for a sentence reduction.[103]

### 3. Mr. Liscano's Family Circumstances Are Also Extraordinary.

Another court in this district has also found *an excessive sentence* coupled with a prisoner's rehabilitation and family circumstances can demonstrate extraordinary and compelling reasons.[104] In *United States v. Reyes*, No. 04 CR 970, 2020 U.S. Dist. LEXIS 58894, at *1 (N.D. Ill. April 3, 2020), Reyes was convicted of conspiracy to commit bank robbery, bank robbery, and possessing and brandishing a firearm in connection with the bank robbery. Reyes was sentenced to 60 months for the conspiracy, 216 months for the bank robbery, and 84 months consecutive for the firearm.[105] Reyes sought compassionate release on the grounds that his sentence was excessive, he served majority of the sentence, and his impressive record of rehabilitation.[106] Reyes also provided the court with evidence of his aunt's stage four cancer and her need for help.[107] The court recognized Reye's family circumstances and found it can

---

[102]     *Id.* at *16-17.
[103]     *See infra* Section E.3.
[104]     *United States v. Reyes*, No. 04 CR 970, 2020 U.S. Dist. LEXIS 58894, at *7-8, 15, 2020 WL 1663129, at *3, 5 (N.D. Ill. April 3, 2020) (emphasis added).
[105]     *Id.* at *2.
[106]     *Id.* at * 6.
[107]     *Id.* at *7.

be considered an extraordinary and compelling circumstance.[108] Therefore, family circumstances can also contribute to showing extraordinary and compelling reasons for a sentence reduction.[109]

Like *Reyes*, Mr. Liscano has certain family circumstances that demonstrate extraordinary and compelling reasons for release. Those reasons are discussed below.[110]

### 4. Mr. Liscano Has Served Over the High End of His Current Guideline Range.

In 2005, Mr. Liscano's guideline range was 210-262 months. The sentencing judge made an explicit finding that Mr. Liscano was responsible for 12 to 13 kilograms of cocaine.[111] Today, under U.S.S.G. § 2D1.1(c)(5) Mr. Liscano's total base offense level is 30. His criminal history category remains VI. As a result, Mr. Liscano's recommended guideline range is 168-210 months.

Mr. Liscano has served 222 months (18 years) as of today. The 222 months Mr. Liscano has currently served is a sentence that is greater than his current recommended guideline range of 168-210 months, and within the low-end range of his 2005 guideline range of 210-262 months. Therefore, the time Mr. Liscano has already served is sufficient punishment for his conduct.

### 5. The COVID-19 Pandemic and the Risk to Mr. Liscano.

A sentence disparity and evidence of rehabilitation, in conjunction with the worldwide catastrophic COVID-19 pandemic and its risks on prisoners, can also demonstrate

---

[108]    *Id.* at *7.

[109]    *Id.* at *6-8.

[110]    *See infra* Section E.4.

[111]    Sent Tr. (Nov. 29, 2005) at 118:9-10 (Doc. No. 558), Exh. R.

extraordinary and compelling reasons.[112] Mr. Liscano tested positive for COVID-19 on December 18, 2020.[113] The COVID-19 pandemic has particularly ravaged federal prisons, and there is no telling the effects COVID-19 variants will have. There are approximately 126,413 federal prisoners nationwide.[114] An astounding ⅓ of America's federal prison population (46,028 inmates) has contracted COVID-19.[115] According to the BOP's COVID-19 Inmate Test Information, as of April 2021, the Pekin's facility reported that 762 prisoners (of its 1153 inmate population that have completed test) have tested positive.[116] It is unclear whether BOP facilities have established procedures/policies to address COVID-19 variants.[117] The recent

---

[112]    *See United States v. Stephenson*, 461 F. Supp. 3d 864, 874 (S.D. IA. May 1, 2020) (holding the defendant's "unique health risks, rehabilitation, and greater-than-necessary sentence constitute extraordinary and compelling reasons."); *United States v. Brown*, 457 F. Supp. 3d 691, 704 (S.D. IA. April 29, 2020); *United States v. McPherson*, 454 F. Supp. 3d 1049, 1953 (W.D. WA. April 14, 2020).

[113]    *See* Exh. D.

[114]    *See* BOP data available at https://www.bop.gov/coronavirus/ (last visited April 17, 2021).

[115]    *Id.*

[116]    *See* BOP, *COVID-19 Inmate Test Information*, https://www.bop.gov/coronavirus/ (last visited April 16, 2021).

[117]    *See* BOP, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/ (last visited April 16, 2021) (providing no information on the responses or plans for COVID-19 variants, only COVID-19); Michigan Department of Corrections, *MDHHD Identifies 90 cases of COVID Variant*, https://www.michigan.gov/corrections/0,4551,7-119-1441_26969-552181--,00.html (last visited April 16, 2021); *see also* FDA, *Genetic Variants of SARS-CoV-2 May Lead to False Negative Results with Molecular Tests for Detection of SARS-CoV-2 - Letter to Clinical Laboratory Staff and Health Care Providers* (Jan. 8, 2021), https://www.fda.gov/medical-devices/letters-health-care-providers/genetic-variants-sars-cov-2-may-lead-false-negative-results-molecular-tests-detection-sars-cov-2#:~:text=Most%20molecular%20tests%20for%20SARS,individuals%20as%20the%20pandemic%20progresses (last visited April 19, 2021) (warning health providers and clinical laboratory staff to be aware that genetic variants of SARS-CoV-2 arise regularly and false negative test results can occur in current SARS-CoV-2 tests).

federal statistics illustrate the BOP's inability to contain the COVID-19 virus, potentially its variants, and the serious threat inmates face.[118]

In this case, there is a trifecta of government concessions that demonstrate extraordinary and compelling reasons for compassionate release:

> (1) The Government does not contest Mr. Liscano's argument that the sentencing court erred in imposing a mandatory life sentence;[119]
>
> (2) The Government admitted that it imposed a trial tax and retaliated against Mr. Liscano for exercising his constitutional trial right;[120]
>
> (3) The Government admitted that it did not notify Mr. Liscano of whether it would seek a mandatory life sentence based on his prior convictions.[121]

In addition, the following factors further add to the constellation of extraordinary and compelling reasons for compassionate release:

> (4) Mr. Liscano is currently serving a sentence that is catastrophically disproportionate to the one he would receive post-1SA;
>
> (5) Mr. Liscano has served the current guideline range of 168 to 210 months' imprisonment;
>
> (6) Mr. Liscano's family circumstances--Mr. Liscano wants to nurture his relationship with his daughter beyond prison walls, and he wants to be present for his daughter's high school graduation this year;

---

[118]    Mr. Liscano's medical records indicate that he has an unidentified "mass" or "lump" in his chest that has been present since 2010. Exh. D at 2.

[119]    *Steve R. Liscano v. Warden*, No 19-1531 (7th Cir. April 1, 2020), Government's Response in Brief of the Respondent Warden at 11(Doc. No. 22).

[120]    Sent Tr. (Oct. 28, 2003) at 37 (Doc. No. 662), Exh. P;

[121]    *Liscano*, No. 02 CR 719 (N.D. Ill. May 21, 2003) Government's Response to Defendant's Objection to PSR and Section 851 Notice at 5 (Doc. No. 371).

(7) Mr. Liscano has demonstrated positive rehabilitative efforts while serving a life sentence; and

(8) Mr. Liscano's risk of contracting and experiencing severe symptoms of COVID-19, and its variants, while in BOP custody is concerning.

These eight facts, taken together, demonsrtate extraordinary and compelling reasons for Mr. Liscano's compassionate release.

### E. Steve Liscano Has *Earned* a Reduced Sentence When the 3553(a) Factors are Considered.

#### 1. History of Steve Liscano

Poverty, and its shortcomings, was no illusion for young Steve. It was reality. Young Steve grew up in a neighborhood where gang activity was prevalent. And every day, young Steve watched his family struggle to survive. This recurring picture presented young Steve with a burdensome decision—turn to the streets and help support his family; or do nothing and continue to suffer. For some, such a way of thinking can never be conceptualized/understood. For others, it's a valid thought/reality.

In 2005, Steve Liscano stood before this Court as a product of poverty. He was young, impressionable, and uneducated. At the age of 15, he met Juan Corral. Young Steve was "naive" and susceptible to making poor decisions due to drugs and alcohol, and his environment.[122] Science has shown juveniles "'are more vulnerable or susceptible to negative influences and outside pressures, including peer pressure'; and their characters are 'not as well formed.'"[123] Overtime, however, Mr. Liscano has changed. He is "no longer the young man

---

[122]    PSR at ¶ 575-78.
[123]    *Graham v. Florida*, 560 U.S. 48, 68 (2010).

who did not value [his] freedom, [his] family, or [his] community."[124] And most importantly, he has disavowed the gang membership of his youth. Throughout the first half of Mr. Liscano's incarceration, he received five disciplinary infractions.[125] Mr. Liscano acknowledges and takes responsibility for the mistakes he made in the early stages of his incarceration. He asks "the court to consider that no man should be judged solely by his worst mistake[s]."[126]

For over a decade, Mr. Liscano has maintained excellent behavior, and has proven that he is capable of change—that he is not a product of his mistakes.[127]

> Your Honor I have spent the last 18 years of my life living with remorse for the hurt I've caused my family, my community, and frankly myself. I now understand the pain and suffering I've caused by my prior decisions and humbly ask the court to show mercy for myself . . .

Exh. L pg. 1. Today, Steve Liscano, comes before this Court as a reinvented man. Because of time, and adequate access to a variety of educational and behavioral resources and opportunities, Steve Liscano is a new individual--one that is better than ever before.

### 2. Current Characteristics and Rehabilitation of Steve Liscano

> *"This letter of recommendation in support of Mr. Liscano is as follows. Mr. Liscano has been an employee for me as a center office orderly where he was trusted to work around our unit team, cleaning our office area. His work ethics have been very good. He works well with federal employees as well as other inmates. . . I believe that Mr. Liscano's hard work ethic and positive attitude will continue to guide him in being a productive citizen in society."*

> --T. Meyers, Illinois Unit Correctional Counselor[128]

---

[124] Exh. L. pg. 2.
[125] 2015 BOP Report at 3, Exh. E.
[126] Exh. L. pg. 2.
[127] 2016 BOP Report at 2, Exh. F.
[128] Exh. G.

Since his incarceration in 2002, Mr. Liscano has taken advantage of the BOP resources. Mr. Liscano has completed his GED and numerous educational courses and behavioral programs over the past decade.[129] In 2009, after completing 350 hours of vocational programs, Mr. Liscano received his certificate of completion for General Carpentry and Residential Electrical work.[130] In 2016, Mr. Liscano became certified under § 609 of the Federal Clean Air Act to properly handle vehicle air conditioning refrigerant and recycling equipment.[131] And, he received his certificate of completion for completing 360 contact hours and 36 continuing education units for VT Building Trades through Century College.[132] [133]

Currently, Mr. Liscano is in the electrician program/apprenticeship where he maintains a full-time work schedule.[134]

> *"As a grade 1, which is the highest pay grade of facilities, inmate Liscano has worked above his level of grade 1. Liscano has saved the institution money on several occasions by fixing appliances instead of sending them to a contractor. Liscano regularly works on security lighting which is often a less desirable job by other inmates."*

> --Recent BOP Officials remarks on Liscano's work performance[135]

Everyday Mr. Liscano's uses and operates a variety of tools (i.e. saws, hammers, fork lyfts, etc.) that can be considered dangerous. Mr. Liscano has never gotten in trouble while using any tools and maintains an excellent work rapport.[136] In fact, BOP officials report Mr. Liscano

---

[129]    *See* 2021 BOP Report at 1-2, Exh. H; Certificates, Exh I.
[130]    *See* Exh I pg 6.
[131]    *See* Exh I pg 7.
[132]    *See* Exh. I pg 12.
[133]
[134]    *See* Exh J; Exh. K.
[135]    *See* Exh. K.
[136]    Exh. K.

"needs little supervision."[137] The level of trust required by the BOP to place such tools in the hands of a prisoner reflects BOP officials' belief that Mr. Liscano poses no danger to officials and other inmates.

Mr. Liscano has worked his entire incarceration career, completed over 600 hours of vocational training, and maintained consistently positive work evaluations.[138] Mr. Liscano is also a highly skilled artist, a talent which he has further developed over the past 15 years through painting and sculpture.





*Photos of Steve Liscano's Handmade Pottery*

*Steve Liscano (center) in working in the BOP's Building Trades Program.*

Based on Mr. Liscano's BOP conduct and reports, and his BOP work history it is evident that Mr. Liscano would not pose any danger to the community, if released. Mr. Liscano has spent the majority of his adult life incarcerated, and it is unlikely he will again risk his freedom and opportunity to be physically present in his daughter's life by committing future crimes.

---

137   *Id.*
138   *See* Exh H.

### 3. Mr. Liscano Family Circumstances

> *When I held my daughter for the first time something inside me changed. I never felt anything like that before. Something in me changed and I knew I could find a way to be a productive person, a better individual, inside or outside of prison.*
>
> –Statement of Steve Liscano

If given a second chance, Mr. Liscano's first priority in the event of his release will be to nurture his relationship with his teenage daughter Karizma, who lives with her mother, Blanca Sernil. Steve was federally arrested at the hospital the day after Karizma was born.



*Karizma Liscano with original artwork by Steve and showing her support for her Father's release.*

Despite his life sentence, Steve has always maintained an active fatherly role, helping Karizma with her math homework over the phone and sending her drawings and pottery. Karizma has never known her father's love and support beyond cards, letters, and phone calls, but she remains faithful that his homecoming will fill the tangible emptiness left by his lifetime banishment.

Like his daughter, Steve also dreams of starting a new chapter of his life with Karizma and sharing in life's milestones together, from celebrating birthdays and holidays, to watching Karizma walk across a stage as she receives her diploma for graduating high school.

> *"I no longer look at life through the eyes of an irresponsible young man but through the eyes of a loving, caring father. I long to change the course of my life in order to provide safety, security and stability for Karizma and for the children in my community who may be heading in the wrong direction."*

Statement of Steve Liscano on April 15, 2021.[139]

Each day, Steve continues to better himself, incentivized by the prospect of one day raising his daughter outside prison walls.

### 4. The Need to Avoid Unwarranted Disparities

Steve Liscano is the only person who received an above-guidelines sentence in this case. The conspiracy's undisputed ringleader (Juan Corral) testified against Mr. Liscano, was rewarded with an agreed 15-year sentence, and was released in 2013.[140] More culpable members of the conspiracy who were found responsible for 10 times the cocaine attributed to Mr. Liscano received within or below guidelines sentences.[141] Even the similarly-culpable Raphael Pena, who was found responsible for between 5 and 15 kilograms of cocaine *and* a firearm, received a sentence of only 156 months and was released in 2014.[142] Aside from Steve Liscano, Abraham Estremera is the only Corral customer who remains incarcerated.[143]

---

[139]    *See* Exh. L.

[140]    PSR at pg. 2.

[141]    *See Id.* A detailed chart is provided below showing the final sentence imposed for each co-defendant.

[142]    *United States v. Pena*, No. 02 CR 719-4 (N.D. Ill. March 13, 2008), Amended Judgment (Doc. No. 635).

[143]    *See* BOP Inmate Locator https://www.bop.gov/inmateloc/ (showing Estremera is still in BOP Custody with a release date of Life).

Estremera's continued incarceration may seem less surprising where the district court considered evidence that Estremera had committed multiple murders in Aurora.[144]

Steve Liscano's above-guideline sentence was grossly disparate not only when compared to his co-defendants, but uniquely excessive when compared to cocaine powder offenders nationally. According to the United States Sentencing Commission's latest data, from 2019, there were 3,581 drug trafficking powder cocaine offenders federally sentenced.[145] Approximately 39.2% received a within-guidelines sentence; approximately 22% received sentences below the guideline range; and less than 0.2% were, like Steve Liscano, sentenced above the guideline range.[146]

Based on the nature and circumstances of the offense and the kinds of sentences available, it is evident that Mr. Liscano received a sentence longer than other individuals convicted of similar crimes. It is also evident that the life sentence Mr. Liscano received is much longer than one he might have otherwise received, if it were not for the excessively harsh mandatory minimum sentence.[147]

### 5. Mr. Liscano has a Release Plan

Steve Liscano is now 43 years old and has spent the vast majority of his adult life in

---

[144]    Sent. Tr. (Nov. 29, 2005) at 72-73, Exh. R.

[145]    U.S.S.C., 2019 Annual Report and Sourcebook of Federal Sentencing Statistics, Table D-1 at 109, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2019/2019-Annual-Report-and-Sourcebook.pdf. The term "drug trafficking offenses" encompasses offenders sentenced under §§2D1.1 (Drug Trafficking), 2D1.2 (Protected Locations), 2D1.5 (Continuing Criminal Enterprise), 2D1.6 (Use of a Communication Facility), 2D1.8 (Rent/Manage Drug Establishment), 2D1.10 (Endangering Human Life While Manufacturing), or 2D1.14 (Narco-Terrorism).

[146]    *Id.* at 123 (Table D-14).

[147]    *Id.* at *4.

34

federal prison. Mr. Liscano intends to focus on the skills he has learned in prison and reuniting with his family. Nina Castellanos, Mr. Liscano's youngest sister, is married and a mother of two. She owns a home with her husband, Matthew Castellanos, and has prepared an extra bedroom where Mr. Liscano would live, should he be released. Nina and Matthew will provide a stable environment for Mr. Liscano and they will support his transition from prison. Mr. Liscano's friend, Jose Cazares, has also offered to help him secure employment in the electrician trade.

## IV.    CONCLUSION

Mr. Liscano's life sentence for a nonviolent cocaine offense is both a relic of an outdated, excessively severe sentencing regime and, perhaps more importantly, deemed an erroneous sentence today. His life sentence is also an example of the unrestrained power of the federal prosecutor who single-handedly determined that Mr. Liscano would pay a retaliatory trial tax with the balance of his life.

Steve Liscano is not serving a mandatory life sentence because a judge found him to be a violent person, a serious drug recidivist, or an irredeemable societal toxin. No federal judge's appraisal of him ever factored into his permanent banishment. Today, however, this Court is free to exercise its discretion to fashion a sentence that adequately reflects the seriousness of Mr. Liscano's offense and his character—a sentence that avoids unwarranted disparities.

WHEREFORE, the First Step Act grants the district court authority to reduce Mr. Liscano's life sentence based on extraordinary and compelling reasons under 3582(c)(1)(A). Defendant Steve Liscano is eligible for a sentence reduction under 3582(c)(1)(A) as amended

by Section 603 of the 1SA, and he certainly deserves such a reduction based on the extraordinary and compelling reasons argued above. He has certainly earned such a reduction and respectfully requests this Court reduce his total term of imprisonment to 210 months.

Respectfully submitted,

/s/ Talisha Griffin
TALISHA GRIFFIN

/s/ MiAngel Cody
MIANGEL CODY

TDC LAW OFFICE
1325 S. Wabash Ave. Suite 305
Chicago, IL 60605

*Counsel for Steve Liscano*

## CERTIFICATE OF SERVICE

The undersigned, Talisha Griffin, an attorney with The Decarceration Collective Law Office, hereby certifies that on _____ , 2021, I electronically filed the following with the Clerk of the Court using the CM/ECF system:

**STEVE LISCANO'S MOTION TO REDUCE HIS LIFE SENTENCE PURSUANT TO 18 U.S.C. § 3582(C)(1)(A) AS AMENDED BY SECTION 603 OF THE FIRST STEP ACT**

/s/ Talisha Griffin
TALISHA GRIFFIN

TDC LAW OFFICE
1325 S. Wabash Ave. Suite 305
Chicago, IL 60605

*Counsel for Steve Liscano*