IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 02cr719-16 |
| v. | ) | |
| | ) | Judge Thomas M. Durkin |
| STEVE LISCANO | ) | |

**DEFENDANT STEVE LISCANO'S REPLY IN SUPPORT OF HIS
MOTION FOR COMPASSIONATE RELEASE**

Steve Liscano looks proudly at the collection of hammers, knives, sharpened scissors, and tools in his possession at Pekin Federal Prison. Some might see his cache as a treasure trove of dangerous contraband. Mr. Liscano sees a future beyond his permanent banishment. There are approximately 950 inmates at Pekin prison. Only six of the prison's most trusted inmates were selected for an electrical apprenticeship. Steve is the only life-sentenced prisoner who BOP guards selected for the apprenticeship program.




*Steve Liscano (pictured) repairing security lighting at Pekin Prison*

1

It has been 16 years since the government procured a congressionally unauthorized life sentence against Mr. Liscano. Many of us would become bitter or stagnant under similar circumstances. Mr. Liscano has not wasted his life, however. As his supervising prison guard reports, Mr. Liscano is "a positive example to other inmates" and he "maintains a tool chit, which is a big trust among staff."[1]

Mr. Liscano's unlawful life sentence and his unique personal circumstances, when combined with the government's laundry list of conceded errors, constitute extraordinary and compelling reasons to warrant a sentence reduction. Furthermore, Mr. Liscano's remarkable rehabilitation, the unwarranted disparity of his life sentence and the ongoing pandemic are § 3553(a) factors weighing in favor of his release. For the reasons that follow, STEVE LISCANO, by undersigned counsel MIANGEL C. CODY, respectfully submits this Reply in further support of his Motion for Compassionate Release.

## I.    DISCUSSION

### A.    Mr. Liscano's legislatively unauthorized life sentence – when combined with additional unique facts in this case – create extraordinary and compelling reasons for his compassionate release.

> *"[A]s the defendant correctly notes, neither of the prior convictions relied upon by the sentencing court to support defendant's life sentence qualify as § 841(b) predicates under the Supreme Court's decision in Mathis v. United States, - ---U.S.---, 136 S. Ct. 2243 (2016)."*
>
> – Gov't Resp. at 10.

A good place to start is where the parties agree. The government does not dispute that it sought and secured a life sentence against Mr. Liscano that was "erroneously imposed." Gov't Resp. at 10.  The government does not dispute that, just two weeks before

---

[1]    *See* Exhibit A BOP Work Performance Evaluation for Inmate Steve Liscano, dated March 2021.

2

trial, it filed an 851 Enhancement against Mr. Liscano because he refused to surrender his trial rights. Gov't Resp. at 12. The government does not dispute that the 851 Enhancement it filed against Mr. Liscano "did not expressly state that the government would seek a mandatory life sentence." Gov't Resp. at 11. Notwithstanding this catalog of errors, the government maintains Mr. Liscano should die in prison because, somehow, he has not established extraordinary and compelling reasons for a sentence reduction.

The government's opposition rests upon a misinterpretation of the Seventh Circuit's recent decision in *United States v. Thacker*, No. 20-2943, 2021 WL 2979530, at *1 (7th Cir. July 15, 2021). The *Thacker* appellant sought compassionate release to reduce his 33-year sentence, which included pre-First Step Act stacked gun penalties. The district court denied Thacker's sentence reduction, concluding a § 924(c) sentence that was "lawfully imposed" (before the First Step Act's anti-stacking amendment) but later legislatively reduced is not an "extraordinary and compelling reason" for compassionate release. The Seventh Circuit affirmed and held: "Given Congress's express decision to make the First Step Act's change to § 924(c) apply only prospectively, we hold that the [§ 924(c)] amendment, whether considered alone or in connection with other facts and circumstances, cannot constitute an 'extraordinary and compelling' reason to authorize a sentencing reduction." *Id.*

The Seventh Circuit's reasoning in *Thacker* is threefold. **First**, the Seventh Circuit limited its *Thacker* holding to mandatory minimum sentences that were "lawfully imposed" prior to the First Step Act. *Id.* at *4. **Second**, the appellate court concluded Thacker's motion offended Congress's intent that the First Step Act's anti-stacking provisions apply only prospectively, reasoning: "Thacker's motion, at least in part, [w]as an attempted end-run around Congress's decision in the First Step Act to give only prospective effect to its amendment of § 924(c)'s sentencing scheme." *Id.* at *3. **Third**, the Seventh Circuit reasoned that a non-retroactive change in law *may* be considered when applying the § 3553(a) factors

3

to assess whether a compassionate release motion should be granted and the extent of reduction warranted. *Id.* at *5.

### 1. An unlawfully imposed life sentence, when combined with other facts, may constitute extraordinary and compelling reasons to authorize a sentence reduction.

> *"The government concedes that, under* Mathis *and* Ruth, *defendant's life sentence was erroneously imposed [and] defendant would not have qualified for a life sentence."*
>
> – Gov't Resp. at 10

The Seventh Circuit limited its *Thacker* holding to mandatory minimum sentences that were "lawfully imposed." *Id.* at *4. Here, the government readily concedes that Mr. Liscano's sentence was not lawfully imposed; that is, the Court exceeded its legislative authority when it imposed a life sentence on Mr. Liscano, as did the government in seeking that sentence by means of an 851 Enhancement.

Here is how we got here: At the time of Mr. Liscano's conviction and sentencing, a federal drug offender who had "two or more prior convictions for a felony drug offense" could be subject to a mandatory term of life imprisonment pursuant to 21 U.S.C. §§ 841(b)(1)(A)(viii) and 851.[2] For enhancement purposes, Congress defined what constituted a "felony drug offense" in Title 21 U.S.C § 802(44). A federal drug offender's prior state convictions could be predicates for a 21 U.S.C. § 851 enhancement *only if* those state priors met Congress's federal definition of a "felony drug offense" as statutorily

---

[2]    The First Step Act of 2018 changed the definition of a qualifying predicate under §841(b)(1)(A)(viii) from a "felony drug offense" to a "serious drug felony" and reduced the mandatory minimum from life to 25 years. Mr. Liscano's argument, which the government does not dispute, is that his Illinois convictions did not meet even the pre-1SA definition of a "felony drug offense."

defined in Title 21 U.S.C § 802(44).[3]

Two weeks before trial, the government filed an 851 Enhancement against Mr. Liscano and argued his prior Illinois drug convictions subjected him to the enhanced penalties codified at 21 U.S.C. §§ 841(b)(1)(A). The government now concedes that Mr. Liscano's Illinois drug priors are broader than the federal definition of a "felony drug offense" and, as the government concedes, Congress did not legislatively authorize it to use those Illinois prior convictions as predicates for Mr. Liscano's mandatory life sentence.

This case is materially distinguishable from *Thacker,* where the Seventh Circuit construed the prisoner's compassionate release motion as "an attempted end-run around" congressional intent that would "unwind and disregard Congress's clear direction." *Id.* at *3. The Seventh Circuit correctly observed that the *Thacker* defendant improperly asked the district court to use "the discretionary authority conferred by § 3582(c)(1)(A). . . to effect a sentencing reduction at odds with Congress's express determination." *Id.*

Here, Mr. Liscano does not invite this Court to effect a sentencing reduction at odds with congressional intent. Quite the contrary is true. Congress never intended or authorized the Department of Justice to seek an 851 Enhancement against Mr. Liscano in the first place. In other words, the Justice Department admits that the Court lacked congressional authority to subject Mr. Liscano to the enhanced penalties of 21 U.S.C. §§ 841(b)(1)(A)(viii) where his state priors were for offenses broader than the congressional definition of a

---

[3]     Title 21 U.S.C § 802(44) defines a "felony drug offense" as "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances."

"felony drug offense." *See* Title 21 U.S.C § 802(44). Because the government interpreted its 851 Enhancement powers more broadly than the congressional definition, it is Mr. Liscano's legislatively unauthorized life sentence – not his compassionate release motion – that "offends principles of separation of powers" with which the Seventh Circuit was concerned in *Thacker*. The government's response fails to address this important nuance in the *Thacker* holding.

The unfairness in this case is similar to another case from our district, *United States v. Conley*, No. 11 CR 0779-6, 2021 WL 825669 (N.D. Ill. Mar. 4, 2021). In *Conley*, the defendant received a mandatory minimum sentence based upon a fake stashhouse ruse orchestrated by the government. Granting compassionate release, the Court (Coleman J.) discussed at length the "inherent unfairness and injustice of Conley's sentence" and concluded his health conditions "in combination with the injustice of his conviction and sentence" constitute extraordinary and compelling reasons for his compassionate release. *Id.* at *4.

The government contends Mr. Liscano should continue to serve an unlawful life sentence — that it procured in error — because his "challenges to his sentence are not individualized" and he "relies on grounds applicable to a broad class of offenders sentenced to enhanced penalties based on prior convictions later determined not to qualify as predicates under § 841(b)." Gov't Resp. at 13. Apparently, according to the government, erroneous life sentences in this district occur with such frequency as to amount to "a common, class-wide circumstance" that "is not, and cannot be deemed, extraordinary." Gov't Resp. at 13 (internal quotations omitted). As a threshhold matter, the government's response states Mr. Liscano's predicament applies to "a broad class of offenders," but it fails

to inform the Court precisely how many other cases exist with *all* of the unique facts that Mr. Liscano's case presents: (a) a legislatively unauthorized life sentence; (b) an 851 Notice that failed to disclose the defendant faced a mandatory life sentence; and (c) the government's express admission on the record at sentencing that it filed the defective 851 Notice just weeks before trial in retaliation for a defendant's exercise of trial rights.

Furthermore, Mr. Liscano's reasons for a sentence reduction need not be rare in order to be extraordinary and compelling. The fact that the government may have *quantitatively* made the same error more than once does not mean the error is not *qualitatively* extraordinary and compelling. The government cites no caselaw to support its argument that a defendant must demonstrate his circumstances are quantitatively "rare" to meet the extraordinary and compelling standard. Diabetes, hypertension and other medical ailments are not "rare," but have all been extraordinary and compelling reasons for release.

### 2. Mr. Liscano's compassionate release motion does not rest on a "change in the law."

The government's response also presents a classic strawman fallacy: It manufactures arguments that it believes Mr. Liscano to make and then spends much of its brief responding to its own conjured up arguments. The government's response states: "were defendant sentenced today, under § 401 of the First Step Act, defendant would not be subject to a statutory minimum sentence of life" but "changes in the law occur with some frequency" and "do not fall within the ambit of § 3582(c)(1)(A)(i)'s required showing of 'extraordinary and compelling reasons' warranting consideration of a sentence reduction."

Gov't Resp. at 11 and 13.[4]

Mr. Liscano has never argued that he is entitled to compassionate release solely or even primarily because the First Step Act non-retroactively lowered Section 851's mandatory minimum drug penalties from life to 25 years.[5] That is an argument he need not make. *Mathis* teaches that Mr. Liscano's life sentence was illegal on the day the Court pronounced sentence. Mr. Liscano's principal argument – which the government readily concedes – is that there was a trifecta of error *from the outset* of his case: (1) "neither of the prior convictions relied upon by the sentencing court to support defendant's life sentence qualify as § 841(b) predicates"; (2) his 851 Notice "did not expressly state that the government would seek a mandatory life sentence;" and (3) the government's decision to seek a life sentence was a "concession [ ] to obtain a guilty plea," and the government only filed the 851 enhancement because Liscano exercised his Sixth Amendment trial rights. Those facts, in their totality, are extraordinary and compelling.

---

[4]     Before the First Step Act ("1SA") a third or subsequent conviction for a drug offender charged under § 841(b)(1)(A) mandated the imposition of a minimum life sentence. See 21 U.S.C. § 841(b)(1)(A) (2003). Post-1SA, an enhanced sentence for a third or subsequent conviction now mandates a minimum 25-year sentence (rather than life). See § 401, 132 Stat. at 5221–22.

[5]     At the June 24, 2021, status hearing, Your Honor ordered counsel for the government to address in its response brief the impact of the Seventh Circuit's recent decision in *United States v. Black*, 999 F.3d 1071 (7th Cir. 2021). The government failed to do so.

In *Black,* the Seventh Circuit held a favorable, but nonretroactive statutory change in law must be considered in the Court's 3553(a) analysis when deciding a motion brought under § 3582(c)(1)(A). Though not an extraordinary and compelling reason for his release, *see e.g. Thacker*, 2021 WL 2979530, the First Step Act's favorable but nonretroactive change to the 851 penalty structure is a 3553(a) factor that the Court must consider when assessing Mr. Liscano's motion.

### 3. The 3553(a) factors weigh in favor of a sentence reduction.

Federal agents arrested Steve Liscano at the hospital while he was holding his newborn daughter. She was just hours old. Last May, Mr. Liscano's daughter graduated from high school. He missed her graduation, just as he missed her prom, her first day of kindergarten and her first birthday. We work within a system of numbers, case numbers, guideline ranges, drug quantities and months' imprisonment. For people serving a life sentence, the numbers cannot capture the magnitude of life missed. Because Mr. Liscano has demonstrated extraordinary and compelling reasons exist for his compassionate release, the Court next looks to whether a sentence reduction under the circumstances is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Dawson*, 980 F.3d 1156, 1162 (7th Cir. 2020); *United States v. Miller*, 834 F.3d 737, 744 (7th Cir. 2016).

#### a. Steve Liscano's history and characteristics

> *"I received my tool pass from the Captain to walk freely to and from the units repairing dryers throughout the penitentiary."*

> – Statement of Steve Liscano, Ex. B.

Mr. Liscano does not dispute that he dropped out in the eighth grade, joined a gang and sold drugs. It is not surprising that the government's response starts with those bad facts. But it misses the arc of the story. Even with no certainty that he would ever be released from prison, Mr. Liscano has made remarkable strides over the years. His rehabilitative journey started early. He began studying and obtained his GED while detained awaiting sentencing. After he was sentenced to life in prison, Mr. Liscano signed up for the BOP's vocational skills program. He soon learned he has a knack for fixing things. In 2009, he completed a 350-hour Construction Trades Program.

9

 

In 2016, Mr. Liscano took the exam to obtain a certification in refrigerant and hazardous materials. He scored a 94% and earned certification. Mr. Liscano is proud to report that, while serving a life sentence, he has "learned to build and demo homes with hands on training." and "completed over 50 courses in personal development." [6] Throughout the years, Mr. Liscano mailed a copy of his BOP certificates to his daughter along with a letter encouraging her to study and get an education too. Copies of Mr. Liscano's BOP certificates and the letters to his daughter are attached as Exhibit B.

Mr. Liscano currently works as an electrician apprentice at Pekin federal prison, a highly selective position of trust. A recent BOP work evaluation describes Mr. Liscano as follows:

> *"As a Grade 1, which is the highest pay grade of facilities, Inmate Liscano has worked above his level of Grade 1. Liscano has saved the institution money on several occasions by fixing appliances instead of sending them to a contractor. Liscano regularly works on security lighting which is often a less desirable job by other inmates."*

---

[6]     See Exhibit C, Letter to Judge Durkin from Steve Liscano, dated January 2, 2021.

Mr. Liscano's dream is to become a Master Electrician and Journeyman and to join the union. Despite his life sentence, it is a dream he has worked toward for nearly 20 years. According to Mr. Liscano, "[E]ven though I was sentenced to spend the rest of my life in prison, I've never given up hope."[7]

### b. The need to avoid sentencing disparities

This case is rife with unwarranted sentencing disparities. *First*, the government conceded it did not file an 851 Enhancement against Mr. Liscano until he elected to proceed to trial. A trial tax creates an unwarranted disparity because it tethers the ultimate penalty to a defendant's trial decision as opposed to the severity of the criminal conduct. The government would be hard pressed to argue the penalties exacted in this case were based solely upon the defendants' criminal conduct. The conspiracy's ringleader Juan Corral received an initial sentence of 180 months, received a government-sponsored sentence reduction in 2012, and was released nearly a decade ago in 2013. In *Conley*, this Court (Coleman J.) found the government's trial tax to "weigh heavily in favor of a sentence reduction." In granting compassionate release, the court concluded a defendant "should not be punished with a grossly disproportionate sentence, which was the result of a 'trial tax,' just because he maintained his innocence throughout the proceedings." *Conley*, 2021 WL 825669 at *5.

*Second*, it is also an unwarranted disparity that the government has taken a position in this case directly contrary to its position in other districts. In *United States v. Scott*, 1:00-cr-

---

[7]      Mr. Liscano's Unit Manager is Gary Brown. Unit Manager Brown has helped several life-sentenced prisoners at Pekin prison maintain hope and rehabilitation. Mr. Brown's efforts have led to the successful reentry of a number of men who were once destined to die in prison.  Mr. Brown's professionalism, compassion and mentorship deserve particular memorialization in this court record.

00069-MR-5 (W.D.N.C. March 22, 2021) ECF No. 213 at 5, the government conceded the very point it opposes here. In response to defendant Scott's compassionate release motion, the government acknowledged:

> "This Court has the authority to find that extraordinary and compelling reasons are present for reducing a sentence where the sentence was based on laws that have been substantially revised in the intervening years, such that the prisoner is stuck serving far more time than he could possibly receive if he were to be resentenced today."

The government's response to Mr. Liscano's motion fails to explain why a district court judge sitting in the Western District of North Carolina "has the authority to find that extraordinary and compelling reasons are present for reducing a sentence where the sentence was based on laws that have been substantially revised in the intervening years" but Your Honor sitting in the Northern District of Illinois does not have the authority to address a sentence that was legislatively unauthorized from the outset. The government's inconsistent and contradictory positions is based purely on the coincidence of geography and, thus, create an unwarranted sentencing disparity.

*Third*, a federal drug offender today would face only a mandatory 25 years' imprisonment for a lawfully imposed 851 Enhancement. The Seventh Circuit has held a district court commits reversible error when it fails to consider a favorable statutory change in its 3553(a) analysis for compassionate release. *See United States v. Black*, 999 F.3d 1071 (7th Cir. 2021). The government perplexingly argues that Mr. Liscano should remain imprisoned for the rest of his life based upon an 851 Enhancement that, by its own admission, was erroneously imposed. Certainly, it is an unwarranted sentencing disparity that a properly applied 851 Enhancement today would mandate a 25-year minimum sentence while Mr. Liscano's unlawfully applied 851 Enhancement mandates a life sentence.

12

## II.     CONCLUSION

We find ourselves in an odd dystopian predicament when the U.S. Department of Justice refuses to correct an erroneous life sentence because its mistake may not be "rare." But, alas, that is the crux of the government's response in this case.

Fortunately, the Court need only quote from the government's own brief to find extraordinary and compelling reasons that warrant a reduction:  (1) "neither of the prior convictions relied upon by the sentencing court to support defendant's life sentence qualify as § 841(b) predicates"; (2) his 851 Notice "did not expressly state that the government would seek a mandatory life sentence;" and (3) the government's decision to seek a life sentence was a "concession [ ] to obtain a guilty plea," and the government only filed the 851 enhancement because Liscano exercised his Sixth Amendment trial rights. Those facts, in their totality, are extraordinary and compelling.

Mr. Liscano has been imprisoned for approximately 19 years. This is the first time the Court has had a meaningful opportunity to fashion a sentence that is sufficient but not greater than necessary. With no certainty that the opportunity would arise, Mr. Liscano has spent nearly two decades becoming a different man to present to the Court. The person Steve Liscano has become is the most compelling apology for his drug offense and predictive indication of what the Court can expect from him if he is released.

Respectfully submitted,

By: _____
MiAngel Cody, Esq.
*Counsel for Steve Liscano*

THE DECARCERATION COLLECTIVE
1325 S. Wabash St., Ste. 305
Chicago, IL 60605  Ph: (312) 858-8330

## CERTIFICATE OF SERVICE

The undersigned, MiAngel C. Cody, an attorney with the Federal Defender Program hereby certifies that in accordance with FED.R.CIV.P5, LR5.5, and the General Order on Electronic Case Filing (ECF), the following document(s):

## DEFENDANT STEVE LISCANO'S REPLY IN SUPPORT OF HIS MOTION FOR COMPASSIONATE RELEASE

was served pursuant to the district court's ECF system as to ECF filings, if any, and were sent by first-class mail/hand delivery on July 28, 2021, to counsel/parties that are non-ECF filers.

/s/  MiAngel Cody

MIANGEL CODY

TDC LAW OFFICE
1325 S. Wabash Ave. Suite 305
Chicago, IL 60605

*Counsel for Steve Liscano*

EXHIBIT A: BOP Work Evaluation

BP-A0324
JUN 10

U.S. DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF PRISONS

WORK PERFORMANCE RATING - INMATE

| Inmate's Name  *Liscano, Steve* | Register No. *14996-424* | Unit *IL-1* |
|---|---|---|
| Evaluation Period *March, 2021* | Work Assignment *Electric #1* | |

Bonus Justification *As a grade 1, which is the highest pay grade of facilities inmate Liscano has worked above his level of grade 1. Liscano has saved the institution money on several occasions by fixing appliances instead of sending them to a contractor. Liscano regularly works on*

Signature and Date of Dept. Head Approval *security lighting which is often a less desirable job by other inmates*

Route to Dept. Head for Review, Then to Unit Team

Instructions: Check the best statement in each area. Base your rating on the inmate's overall performance for the rating period--neither the inmate's best day nor worst day--as compared to what is expected of a satisfactory worker in the assignment.

A. QUALITY OF WORK
___1. Unsatisfactory. Makes more errors than should for this level of training. Work must be redone.
___2. Fair. Careless; makes mistakes and does not check work. Should do better work.
___3. Satisfactory. Makes some mistakes but no more than expected at this level.
___4. Good. Makes fewer mistakes than most inmates at this level of training. Does Journeyman level work.
_X_5. Outstanding. Does superior work

B. QUANTITY OF WORK
___1. Unsatisfactory. Lazy, wastes time, goofs off.
___2. Fair. Does just enough to get by. Has to be prodded occasionally.
___3. Satisfactory. Works steadily but does not push self.
___4. Good. Willing Worker. Does a full day's work and wastes little time.
_X_5. Outstanding. Drives self exceptionally hard all the time.

C. INITIATIVE
___1. Unsatisfactory. Always waits to be told what to do. Needs help getting started.
___2. Fair. Usually relies on others to say what needs to be done.
___3. Satisfactory. Can adapt to changes in routine. Will start work without waiting to be told.
___4. Good. Can plan own work well. Acts on own in most things. Doesn't wait to be told what to do.
_X_5. Outstanding. Has good ideas on better ways of doing things.

D. INTEREST; EAGERNESS TO LEARN
___1. Poor. Shows no interest in job. Regards job as a drag or waste of time.
___2. Fair. Shows minimal interest but not very eager to learn.
___3. Satisfactory. Shows average amount of interest. Wants to learn own job but does not put forth extra effort.
___4. Good. Above-average interest in job. Asks questions about own work and related work. May do extra work to improve skills.
_X_5. Outstanding. Eager to master job. Wants to know everything there is to know about it. May read up on own time or volunteer to do things that will improve knowledge.

E. ABILITY TO LEARN
___1. Poor. Has very low aptitude and is very slow to learn. Even when given extra instruction unable to learn no matter how hard trying.
___2. Fair. Slow but if tries eventually will pick up the skills. Needs more instructions than most.
___3. Average. No slower and no faster to learn than most inmates. Requires average amount of instruction.
___4. Good. Learns rapidly. Good memory. Rarely makes the same mistake twice.
_X_5. Outstanding. Very quick to learn. Excellent memory. Is learning much more rapidly than most inmates assigned here. Never makes the same mistake twice.

F. NEED FOR SUPERVISION; DEPENDABILITY; SAFETY; CARE OF EQUIPMENT
___1. Needs constant supervision. If left unsupervised will foul up, get in trouble, or wander off. Undependable.
___2. Needs closer supervision than most. Not very dependable.
___3. Average. Can be relied on for certain things but must be supervised by others. Usually prompt and dependable.
_X_4. Needs little supervision. Good record of dependability an/promptness.
___5. No supervision required. Completely dependable in all things.

Replaces BP-S324, OCT 94

G. RESPONSE TO SUPERVISION AND INSTRUCTION
____1. Poor. Resentful and hostile. May argue with supervisor.
____2. Fair. Resists or ignores suggestions.
____3. Satisfactory. Generally does what is told without any fuss.
____4. Good. No hostility or resentment. Tries to improve.
__X__5. Outstanding. Makes a real effort to please the instructor. Does exactly as is told.

H. ABILITY TO WORK WITH OTHERS
____1. Poor. Negativistic, hostile, annoying to others.
____2. Fair. Doesn't make friends easily. Has some interpersonal difficulties.
____3. Satisfactory. Gets along OK with most co-workers and is accepted by them.
____4. Good. Friendly, congenial, helpful, others like to work with.
__X__5. Outstanding. Gets along well with everyone. Very popular.

I. OVERALL JOB PROFICIENCY
Based on this inmate's overall performance during this work period, if this inmate was an employee of yours in the community would you:

____1. Fire or lay off that individual?
____2. Transfer the person to a less demanding job at a lower pay scale?
____3. Continue to employ the person but without a raise or promotion this time?
____4. Raise the person's pay but keep the person at the same job?
__X__5. Promote the person to a more demanding job at a higher pay rate?

J. GRADES AND PAY
1. Performance Pay - Grade Class (Check one) __/__ 1 ____ 2 ____ 3 ____ 4 ____ M.

2. Hours of Satisfactory work ___176___

3. Regular Pay $70.00  To $35.00 Bonus

4. Bonus Recommended: _✓_ yes: ___ no

5. Total Pay $105.00

| Supervisor's Signature | [signature] | Date 4/1/21 |
|---|---|---|
| Inmate's Signature | | Date |

Inmate _____ was requested to sign this rating, but refused, citing the following reason:

| Staff Witness' Signature | | Date |
|---|---|---|

Inmate Liscano continues to be punctual when reporting to work, have a clean, neat appearance, performs work at or above my expectations, does work tasks without being told to do so, works in a safe manner, and is a positive example to other inmates. Inmate Liscano maintains a tool chit, which is a big trust among staff. Also, I choose him to use A room tools, which requires me to supervise him in its use. Inmate Liscano is also in the electrical apprenticeship which is offered to only 6 inmates in the institution out of 950.

FILE IN SECTION 4 UNLESS APPROPRIATE FOR PRIVACY FOLDER          SECTION

EXHIBIT B: BOP Certificates



# ILLINOIS STATE BOARD OF EDUCATION
# High School Equivalency Certificate

**THIS IS TO CERTIFY THAT**

## STEVE R. LISCANO

has successfully completed the requirements of the High School Level Tests
of General Educational Development and other State requirements, promulgated
by the Illinois State Board of Education, as authorized by the statutes of the State of Illinois.

In recognition of such achievement and as evidence of such entitlement,
I hereunto set my hand and affix the seal of the

County of _____ Dupage _____ this _20th_ day of _____ December _____ 20 04 _____

_Darlene J. Ruscitti_
Regional Superintendent of Schools

_Randy J. Dunn_
**Randy J. Dunn**
State Superintendent (Interim)

# CONSTRUCTION TRADES

This document certifies that

## Steve Liscano

Has satisfactorily completed the prescribed course of instruction of the Terre Haute Vocational Training Program, specializing in the areas of

## General Carpentry and Residential Electrical work

In testimony whereof and by virtue of vested authority, we do hereby confer this

## Certificate Of Completion

on the 11th day of September 2009

# VOCATIONAL TRAINING

_____
Associate Warden Industries & Education

_____
Supervisor Of Education

This vocational Training program provided an overview of general construction trades such as: foundations, structural framing, sub-floors, roofing, drywall, painting, ceramic tile installation, stucco, trim work and electrical installations.

The 350 hour program includes shop activities and exercises as-well-as academic studies. Mr. Liscano was regularly tested on the trades and techniques that were taught in this program.

If you require additional information concerning the performance of this individual, please write:

Terre Haute Education Department
Attn: Vocational Training
4700 Bureau Road South
Terre Haute, IN 47802

D. Miller, Vocational Training Instructor



**Date:** 4/11/2016                    **Certification #:** 832188485550

# STEVE R. LISCANO

**Has been certified as required under Section 609 of the Federal Clean Air Act in the proper use of Motor Vehicle Air Conditioning refrigerant recovery and recycling equipment.**

Certification issued by:



Jerry Weiss,  Executive Director



Date: 4/11/2016      CERTIFICATION # 832188485550

### STEVE R. LISCANO

**Has successfully completed training and is certified as required under Section 609 of the Federal Clean Air Act in the proper use of Motor Vehicle Air Conditioning refrigerant recovery and recycling equipment.**

Certification issued by:
ESCO Institute
1-800-726-9696 www.escogroup.org

# Score: 94%

**STEVE R. LISCANO
546 COLLEGE AVE
AURORA, IL, 60505**

Please visit our website at www.escoinst.com for additional training resources or contact us at 1-800-726-9696 with any questions!





## U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

# CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# UNLOCK YOUR POTENTIAL

K. HAMPE



## U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

# CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# TIME MANAGEMENT

J. WACHTER

SMU



## U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

## CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# 21 GREAT WAYS TO LIVE TO BE 100

K. HAMPE



## U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

## CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# CHANGE YOUR THINKING, CHANGE YOUR LIFE



K. HAMPE



U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

# CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# 21 SUCCESS SECRETS OF SELF-MADE MILLIONAIRES

K. HAMPE

Kadi,                                                    1-29-12

What a dream to one day become
a millionaire. You can do it though Karizma
just keep on doing your best and saving.
Always putting away your money to invest
at a later time. We gotta get you a bank
account huh? 😊 soon ...



U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

# CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

## 21 GREAT WAYS TO GET PAID MORE AND PROMOTED FASTER

K. HAMPE

Kadi,                                               1-29-12

Get paid more and Promoted faster:

Basic way's are by working hard at everything you do And learning several things. The more harder you work, the more your appreciated and given more responsibility because your trusted with desions you make.

Kinda like you doing good in school. The more you learn the farther you get in grade or class. Or the more responsible you do in taking care of your chores and home work. The more me and mommy get you because you've earned it.

"Be nice!"

Thinking of you!
♡ daddy.



## U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

## CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

## 21 GREAT WAYS TO BECOME AN OUTSTANDING MANAGER

K. HAMPE

Kadi,                                                          1-29-12

21 Great ways to become an outstanding manager:

Before a person can even think of owning or building their own successful ~~build~~ business. They'll have to know how to manage several people and be able to direct them on how to do things right and better. Its like having good leadership skills. "You have good leaderships skills Kadi, just like daddy."

Being a manager is like being a boss of a certain amount of people and with a certain responsibility to help them acheive their goals.

"Your the manager of my ♡ heart." Love ya!



## U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

# CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# BUILD YOUR OWN SUCCESSFUL BUSINESS

J. WACHTER

SMU

Kadi,

1-29-12

## Build your own successful business.

Well I suppose Its always been a dream of mines to build my very own Successful business. Thats why I try to do as much as possible to encourage you to study hard and do your best at anything you do. So that latter on you can be really successful doing important things in the world.

If you continue to work hard one day you'll build your own successful business ... like a Veternairian center to take care of hurt or sick animal's.

I'll always be proud of you baby and will do my best to help you succeed. Its my ultimate goal in life." ♡ LI ..."

## U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

# CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# GET THE JOB YOU REALLY WANT



_____

J. WACHTER

1-29-12

Kadi,

Get the job you really want.

I took this class so that it could help me in being able to apply all the skills I have accuired, in order to get a job alot easier. Also a job that I'd really want. It taught me how to speak in a respectful manner, and on how to be prepared for all kinds of questions that might be asked by someone interveiwing you.

Karizma its always important to prepare ahead of time for any job. Some times even practising how to do certain things, even studing or doing research on what it is you'll be doing.

Gotta work for that $!

## U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

# CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# 21 GREAT WAYS TO BUILD A HIGH PROFIT BUSINESS



K. HAMPE

Kadi,                                                    1-29-12

21 Great ways to build a high profit business:

Not only would I like to have a successful business but also a high profit business. Gotta think BIG baby! The more money, the less to worry about paying bills right. Its always better to have your own business that way your the one in charge of things. Directing people on how to do things and geting paid at the same time, cant beat that. Teaching people also gives joyful peace of mind and owning a high profit business takes alot of work but anything can be done right Kadi...☺

U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

# CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# 21 GREAT WAYS TO HIRE AND KEEP THE BEST PEOPLE



_K. Hampe_

_____

K. HAMPE

Kadi,                                                                    1-29-12

21 ways to hire and keep the best people:

In order to have a successful business you've got to hire the right kind of people. People who work hard and are responsible in all that they do. People who show ~~interest~~ interest in their position at work. who put in extra hours before and after without complaining. People who actually enjoy doing their jobs. Alot of these kinds of things were taught in this class.

"I ♡ u."

♡ DAD.

U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

# CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# 21 GREAT WAYS TO STAY IN LOVE FOREVER



K. HAMPE

Kadi & Mommy,                                                    1-29-12

21 Great ways to stay in Love forever:

As always Im going to continue all my life to
do my best and give all my heart and Love to you and
mommy. So I took this class with the both of you in mind
and heart. My Great way's are much, much, more than just
21 way's. And everyday I pray to be able to express and
show you both how much you mean to me. I Love you both
with all my heart and soul. So the secret's Ive learned from this
class I plan to always use and apply in our lives. With the
intention of staying in love forever with your mommy.
        Of coarses Karizma you'll always be mine Valentine.
                I'll Love you Forever and ever too Kadi....
        Staying in love is All I want.

                                        ♡u DAD.

## U.S.P. LEWISBURG

PRESENTS

# STEVE LISCANO

WITH THIS

# CERTIFICATE OF COMPLETION

FOR THE SUCCESSFUL COMPLETION OF THE FOLLOWING

ADULT EDUCATION COURSE

# SPEAK ON YOUR FEET



K. HAMPE

1-29-12

Think on your feet:

Gotta be able to think when your on the go. Puting things together in your mind to accomplish throughout the day and geting them done.

EXHIBIT C: Steve Liscano Letter to the Court

1-2-21

Dear, Judge Thomas M. Durkin

Being sequestered in an unforgiving system has had a profound effect on my resolve. Not only that, but being a young man sentenced to life in prison has made a tremendous impact in so many ways. For years I was broken hearted, attempting to accept the fact that I would be absent in my families and most if not all of my young daughter's life; it brought about much travail, like an abscess in my soul.

However, I refused to resign my life to the chaos and defeat that surrounded me. The idea that my life was worthless and meaningless haunted me to no end, yet something paradoxical occured. "I became driven." Motivated that my life's purpose could be reclaimed once again. I applied myself in every way possible to combat a life of perdition.

There has been no end in sight for almost 20 years. The tears have come and gone, and come again with sleepless nights as my only friend, wondering if I will have to endure the hardship of watching all of my loved ones slowly fade away. Not being there for their funerals, further compounded my misery and shame. Life is fragile and precious and deserves to be lived deliberately and intentionally. I have seen so many men given the same sentence as I. Consumed with resentment they abandon all hope and descend into a life of violence, hatred and apathy.

2.)

They persecute everyone around them and become predators in the system.

Your honor, I have fought against this mentality and way of life even though their pain, fear, hurt and shame they are attempting to placate, resonates with me deeply. This unhealthy consequence of not dealing with yourself runs rampant within this system. I am asking you as an individual of respectable authority to hear my words, but beyond that, see my heart. To be completely honest and vulnerable with you, your Honor, its hard and wearisome for me to plan a hypothetical life outside of these walls being how things continue to turn out on my behalf. However, I do have dreams...

I plan/dream of pursuing my Electrical Apprentice-ship through the local Union to accomplish receiving my maintenance electrical certification in order to take the Journeyman and Master Exam to become a licensed Electrician. Saving money to buy a home for my daughter Karizma and I to live in. Work hard and providing for her in recompense of my absence in her life while she attends school for Cosmetology. Also saving in hopes to be approved for a loan regarding a food vending truck, acquiring the appropriate licensing in order to do so and making it a family event in enterprise. As there are many wonderful and accomplished cooks within my support system.

Continuing to pursue the hobbies that I have

3.)

Forged during my incarceration and investing in these crafts. Such as leather crafting with intent to begin a women's comfort high-heel design. Ceramics-pottery to create common household items like ceramic lamp fixtures or table vases, candle holders ect. Painting - portrait painting for anyone whom has the desire to bring the life out of a drawing. I aspire to create these dreams into foundations of success for my daughter and family. With these dreams coming to fruition I also want to open a salon for my daughter. To begin an unprecedented relationship with Karizma. Therefore all in all becoming a mentor, role model, someone whom the youth in my family and community can turn to for sound, honest, trustworthy advice. By providing healthy recreational and spiritual outlets for impoverished children as I once was.

Because of the Bureau of Prison's Educational and Vocational Training, I have been set on a course to be successful in a free society. I have worked the entirety of my incarceration earning an approval for a "Captain's Tool Pass," a requisite of highly sought after Vocational Training Programs. I've completed over 600 hours of Vocational Training and maintained consistent positive work evaluations which has furthered my preparation for potential release. In 2006, I received my G.E.D. In 2009, I completed the General Construction Course of V.T. Builders Trade and in Large & Small appliance repair. Through these programs I've learned

4.)

to build and demo homes with hands on training. I've completed over 50 courses on personal development. In addition to these aforementioned accomplishments, in 2015, I became a Certified Technician under the Clean Air Act in order to clean, repair and examine air conditioning systems in motor vehicles. I can confidently say that I have seized every educational and cognitive correction opportunity offered in the midst of tremendous adversity with no tangible evidence that I could one day use these skills. Even though no hope seemed plausible my spirituality and faith allowed me perserverance and attention to the detail of my undertakings.

Your honor shortly before I was arrested at the hospital where my daughter was born, I had an epiphany, and something inside me changed. Holding; craddleing Karizma gave me a profound sense of empathy ... "This we created, this I will always cherish my precious moment." I knew I could find a way to be a productive person, a better individual, no matter the cost or circumstance. I'm now 44 years old and I've spent the vast majority of my life in Federal Prison. Importantly, I have disavowed the gang membership of my youth, an arduous and challenging decision in regards to being sentenced to life in the Federal Prison System. Instead I focus on the skills that I have learned in prison and reuniting with my family. Despite the isolation of

5.)

imprisonment, I've prioritized efforts to maintain a close relationship with all my family. Nina Castellanos my youngest sister is married and a mother of two. She ownes her own home with her husband Matthew Castellanos, and has prepared an extra bedroom where I would live should I be granted relief. They have owned their home since 2011. Matthew has stable employment and Nina is a care taker C.N.A. whom takes care of the elderly at (Homeinstead). They would provide a stable environment including unrestricted transportation as well. In addition I have potential employment prepared through family friend Jose Cazares working for (Ballco), doing all maintenace work. The latter has been confirmed by my attorney with all due respect to this court.

Your Honor, I am grateful to be given this opportunity to bear my heart and soul to you and provide proof of my rehabilitation and repentance for all of my past wrong doings. I pray that I find favor within your capable discretion.

Respectfully Submitted,

Steve R. Liscano