UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA,

v.

STEVE LISCANO

No. 02 CR 719-16

Judge Thomas M. Durkin

## MEMORANDUM OPINION AND ORDER

In 2003, Steve Liscano was convicted of conspiring to distribute cocaine. He was sentenced to life imprisonment because he had two previous felony drug convictions. Liscano's appeal was denied, and he unsuccessfully petitioned for habeas relief. Liscano now moves for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A). For the reasons that follow, the Court grants Liscano's motion and reduces his life sentence to time served.

## Background

### I.     Liscano's Relevant Convictions and Sentencing

Three strikes and you're out. That's the rule in baseball, but it was also the rule on the books when Steve Liscano was sentenced to life imprisonment in 2005 for conspiring to distribute cocaine. Before receiving his life sentence, Liscano had been twice convicted under Illinois law for possessing cocaine. Those two felony drug convictions, combined with his third drug conviction stemming from the conspiracy, required the sentencing judge to impose a term of imprisonment no less than life behind bars.

The first conviction came just after Liscano's 18th birthday in 1995 when he was caught with a baggie of cocaine in his pocket. R. 748 ¶¶ 310-315. He received a two-year prison sentence but was paroled after serving four months. *Id*. ¶¶ 310-311. The second conviction occurred five years later. *Id*. ¶¶ 385-386. Authorities searched his home and found a residual amount of cocaine—.9 grams to be exact. *Id*. ¶¶ 390-392; R. 736-1 at 6; R. 736-16 at 23. Liscano was sentenced to 1.5 years in prison, but he was again paroled after three months. R. 748 ¶¶ 385-386.

Then came the third conviction. In 2002, Liscano and about a dozen others were indicted in the Northern District of Illinois with knowingly participating in a conspiracy to distribute and possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846. *See* R. 131-1. The main conspirator was Juan Corral, whose incriminating phone calls with others (including Liscano) were recorded by the government. *See United States v. Bustamante*, 493 F.3d 879, 882 (7th Cir. 2007). Corral pled guilty and agreed to testify against his co-conspirators, while Liscano exercised his constitutional right to trial. *Id.* The evidence consisted primarily of Corral's testimony and the recorded phone calls, and specifically showed that Corral supplied Liscano cocaine over a 10-month period, that Liscano tipped-off Corral to the presence of police near his home, and that Liscano warned Corral of a possible raid. *Id.* Liscano and Corral also had other conversations about drug operations. *Id.* After considering this evidence, the jury found Liscano guilty in 2003.

Sentencing followed. Several hearings were held and the sentencing judge limited Liscano's role in the conspiracy to 12 to 13 kilograms of cocaine, which combined with his criminal history category of VI, resulted in an applicable guideline range of 210 to 262 months' imprisonment.[1] R. 736-18 at 118:6-20. But a sentence within that range is not what Liscano received. Instead, the judge was required by statute to impose a mandatory minimum sentence of life imprisonment. Indeed, before trial, the prosecutor assigned to Liscano's criminal case filed an information under 21 U.S.C. § 851 indicating the government's intent to seek an enhanced sentence based on Liscano's prior drug convictions. *See* R. 281. While the notice did not explicitly state that the enhanced sentence would be life imprisonment, Liscano was federally convicted under 21 U.S.C. § 841, which at the time required a mandatory minimum sentence of life for a defendant who had two or more prior convictions for a "felony drug offense." *See* 21 U.S.C. § 841(b)(1)(A) (2005). A "felony drug offense" is an offense that is "punishable by imprisonment for more than one year" under any state or federal law that "prohibits or restricts conduct relating to narcotic drugs." *See* 21 U.S.C. § 802(44). This definition casts a wide net, and since Liscano's predicate offenses fell within its reach—even though the first offense involved a baggy of cocaine and the second mere residue—the sentencing judge's hands were tied. He had to impose a life sentence. Expressing some hesitation to do so, the judge remarked that Liscano's predicate offenses were "not what I would

---

[1] Judge James F. Holderman presided over Liscano's criminal trial and sentencing, as well as Liscano's post-conviction petition filed under 28 U.S.C. § 2255. The case was reassigned to the undersigned judge in 2013. *See* R. 700.

consider to be extremely aggravated offenses of involvement with controlled substances. Unfortunately, that is not the criterion." R. 736-16 at 38:21-22.

## II.    Subsequent Appeals

Liscano appealed his conviction and sentence, both of which the Seventh Circuit affirmed in 2007. *See Bustamante*, 493 F.3d at 879. He then collaterally attacked his sentence under 28 U.S.C. § 2255, arguing ineffective assistance of counsel. He was not represented by an attorney in that proceeding. The district court denied the motion, *see Liscano v. United States*, 2011 WL 2938103, at *1 (N.D. Ill. July 18, 2011), and the Seventh Circuit denied a request for a certificate of appealability.

A few years later, Liscano filed in the District Court for the Central District of Illinois a petition for a writ of habeas corpus under 28 U.S.C. § 2241. Proceeding *pro se* again, Liscano contended that his baggy conviction should not have counted as a predicate offense at sentencing in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), where the Supreme Court held that Iowa's burglary statute does not establish a form of generic burglary and therefore does not support a sentencing enhancement under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii). Liscano argued that *Mathis* rendered his prior drug convictions categorically broader than the definition of "felony drug offense" in 21 U.S.C. § 802(44).

The district court denied the petition, holding that § 2255(e) barred Liscano from seeking relief under § 2241. *See Liscano v. Kallis*, 2019 WL 8333551 (C.D. Ill. Feb. 5, 2019). More specifically, the court explained that federal prisoners who

4

collaterally attack their conviction or sentence generally proceed by way of motion under § 2255. *Id.* at *2. Liscano may petition under § 2241, the court continued, but only under limited circumstances—that is, if the remedy available to him under § 2255 was "inadequate or ineffective to test the legality of his detention." *Id.* (citing 28 U.S.C. § 2255(e)). This rarely occurs, as Liscano would be required to show at a minimum (1) that *Mathis* created a new rule that applies retroactively to cases on collateral review, and (2) that he could not have invoked a *Mathis*-type argument in his earlier proceedings. *Id.* at *2-3. In the district court's opinion, Liscano could not meet this heavy burden. *Id.* at *2.

An appeal followed but this time Liscano was represented by counsel. The government opposed Liscano's appeal and defended the district court's decision. However, the government expressly stated in its appellate brief that "it does not contest Liscano's argument that the sentencing court erred in imposing a mandatory life sentence." *Liscano v. Entzel*, No. 19-1531 (7th Cir.), Appellee's Brief at 11. That error, according to the government, was insufficient by itself to justify relief under § 2255. *Id.* The Seventh Circuit affirmed the district court's judgment in March 2021; its unpublished order did not address the government's belief that Liscano's sentence was erroneously imposed. *See Liscano v. Entzel*, 839 F. App'x 15, 16 (7th Cir. 2021).

Liscano filed his motion for compassionate release soon thereafter. He is 44 years-old and has served around 226 months (18 years) of his life sentence.

## Standard

Under the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), a court may modify a term of imprisonment upon a motion of the defendant "after the defendant has fully exhausted all administrative rights to appeal" and 30 days have passed without the Bureau of Prisons filing a motion on the defendant's behalf. In determining whether a sentence reduction under § 3582 is appropriate, courts consider: (1) whether "extraordinary and compelling reasons" warrant a reduction; and (2) whether a reduction is consistent with the factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (explaining the two-step process for reviewing compassionate release motions); *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020).

## Discussion

The parties do not dispute that Liscano has met the statutory exhaustion requirement, so the Court turns to whether he has established extraordinary and compelling reasons warranting a reduction of his sentence and if that reduction is consistent with the sentencing factors in 18 U.S.C. § 3553(a).

## I.  Extraordinary and Compelling Reasons

Liscano must first show that his case presents "extraordinary and compelling reasons [that] warrant ... a reduction" in his prison sentence. 18 U.S.C. § 3582(c)(1)(A)(i). Before *Gunn*, the Court's determination of extraordinary and compelling reasons was controlled by the Policy Statement articulated in U.S.S.G. § 1B1.13, whose Application Notes include four explicitly defined considerations—

6

serious medical reasons, age, family circumstances, and the Director of the Bureau of Prisons' determination that an extraordinary and compelling reason exists. *See* U.S.S.G. § 1B1.13 n.1(A)-(D). In *Gunn*, however, the Seventh Circuit held that the Policy Statement "addresses motions and determinations of the Director, not motions by prisoners," and that without an updated statement from the U.S. Sentencing Commission, the Policy Statement and its Application Notes simply provide a "working definition" of extraordinary and compelling circumstances. 980 F.3d at 1180. The Seventh Circuit nevertheless cautioned that "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id*.

Against this backdrop, the Court must determine whether the circumstances here qualify as "extraordinary and compelling reasons," as those words are commonly used. *See United States v. Melvin*, 948 F.3d 848, 852 (7th Cir. 2020) ("Unless words [in a statute] are otherwise defined, they will be interpreted as taking their ordinary, contemporary, common meaning.") (quotation marks omitted). "Extraordinary" means "beyond what is usual, customary, regular, or customary." *Extraordinary*, Merriam-Webster (def. 1), https://www.merriam-webster.com/dictionary/ extraordinary; *see also United States v. Rollins*, 2021 WL 1020998, at *3 (N.D. Ill. Mar. 17, 2021) (applying same definition). Motions for compassionate release are rarely granted, but some courts have found an inmate's particular health conditions in light of COVID-19 to be extraordinary. *See, e.g.*, *United States v. Hall*, 2021 WL 873061 (N.D. Ill. Mar. 8, 2021). Other courts have found the "inherent unfairness and

injustice" of a particular sentence extraordinary. *See United States v. Conley*, 2021 WL 825669, at *4 (N.D. Ill. Mar. 4, 2021) (reducing sentence of defendant who was prosecuted and convicted as the result of a disreputable sting operation); *United States v. White*, 2021 WL 3418854, at *3 (N.D. Ill. Aug. 5, 2021) (same). Another court has found the "sheer and unusual length" of a sentence extraordinary. *See Rollins*, 2021 WL 1020998, at *4-5 ("[I]n a quantitative sense, [defendant's] sentence was a highly uncommon one."). And several courts have concluded that a defendant's rehabilitation efforts while in prison can be extraordinary as long as those efforts are combined with other mitigating factors. *See, e.g.*, *id.* at *5-6; *see also* U.S.S.G. § 1B1.13 cmt. n. 3 (explaining that "rehabilitation of the defendant is not, *by itself*, an extraordinary and compelling reason for purposes of this policy statement") (emphasis added).

Liscano argues that an extraordinary reason supporting a sentence reduction exists in this case because the government has made three concessions that bear directly on his life sentence. For the most part, this Court agrees.

The first concession relates to the argument Liscano previously advanced in his § 2241 petition that his baggy conviction should not have counted as a predicate offense under *Mathis v. United States*, 136 S. Ct. 2243 (2016). On appeal, and in response to Liscano's position, the government conceded that "the sentencing court erred in imposing a mandatory life sentence." The government repeats that belief here, this time incorporating other case law as well.

> "[A]s the defendant correctly notes, neither of the prior convictions relied upon by the sentencing court to support defendant's life sentence qualify

8

as § 841(b) predicates under the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016) [parenthetical omitted] and *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020) [parenthetical omitted] . . . The government concedes that, under *Mathis* and *Ruth*, defendant's life sentence was erroneously imposed, and that the record indicates that, absent application of § 841(b)(1), the defendant would not have qualified for a life sentence, and the district court would not have imposed one."

R. 746 at 10.

At first blush, this statement is noticeably more favorable to Liscano than anything said in the Seventh Circuit's decision affirming the denial of his § 2241 petition. Indeed, the court did not decide whether Liscano's prior convictions qualify as § 841(b) predicates under *Mathis* and *Ruth*. Nor did the court find that Liscano's life sentence was erroneously imposed. Instead, the Seventh Circuit held that Liscano could not proceed under § 2241 because he could have previously pursued a *Mathis*-type of argument at trial, on direct appeal, or in his collateral attack under § 2255. *See Entzel*, 839 F. App'x at 16-17. That is somewhat different than expressly stating, as the government does here, that *Mathis* created a defect in Liscano's sentence. Of course, whether Liscano can obtain collateral relief under *Mathis* or *Ruth* is not the issue before this Court. The procedural hurdles surrounding that question have already been litigated, and this opinion makes no attempt to wade into those disputes. What is important here, however, is that in the context of a life sentence—which is the most severe, unforgiving sentence a defendant can receive absent execution—the government has firmly taken the position that under Supreme Court precedent Liscano's punishment was wrongly imposed.

The government rarely admits that any sentence is legally flawed, though that reason in and of itself is not why the circumstances are extraordinary here. Rather, it is the government's admission concerning Liscano's *life* sentence that makes this situation exceptional. A life sentence is different in kind, and not merely degree, from nearly all other sentences. It is the end of the road. There is no release date, no light at the end of the tunnel, no future to consider. Unlike most other sentences, a life sentence forbids an inmate from ever seeing the other side of a prison wall again. To put it bluntly, the inmate will die in his cell. While a life sentence may be justified (or required) in certain situations, it leads to a slow, tortuous demise that makes rehabilitation and personal development immaterial. In that sense, and as the Supreme Court has observed, a life sentence is unique as it is the only sentence that shares some characteristics with a death sentence. *See Graham v. Fla.*, 560 U.S. 48, 69 (2010), as modified (July 6, 2010) (life without parole and death sentences have characteristics "that are shared by no other sentence" such as "alter[ing] the offender's life by a forfeiture that is irrevocable"); *see also Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in judgment) (life without parole "is the second most severe penalty permitted by law.").

Liscano is 44 years-old. Requiring him to remain in prison for the rest of his life when the government admits that his sentence is flawed produces, quite simply, an intolerable result.[2] That is especially so considering the nature of his predicate

---

[2] The life expectancy of a 44-year-old male is 35.16 years. *See* Social Security Administration Actuarial Life Table for 2019 (available at https://www.ssa.gov/oact/STATS/table4c6.html). Even assuming the figure is lower

offenses. Both involved possession of small amounts of cocaine as a young adult, both were unrelated to violence, and both resulted in no more than a few months spent in prison. In the sentencing judge's own words, they were not "extremely aggravating offenses." And yet, they were both responsible for catapulting Liscano's sentence into a lifetime of punishment. Viewed in this light, the government's admission that Liscano's predicates no longer support his sentence makes this case extraordinary.

The second government concession raised in Liscano's motion concerns the notice filed by the government before trial disclosing its intent to seek an enhanced penalty at sentencing. By way of background, that notice was filed pursuant to 28 U.S.C. § 851, which sets forth the procedural requirements the government must follow in pursuing heightened penalties based on predicate offenses. *See United States v. Lopez*, 907 F.3d 537, 546 (7th Cir. 2018) ("To impose the statutory enhancement under § 841, the government must follow the procedures in 21 U.S.C. § 851.") (citation and quotation marks omitted). Section 851(a)(1) specifically requires the government to state "in writing the previous convictions to be relied upon" at sentencing, while Section 851(b) provides the defendant an opportunity to affirm or deny those convictions. Several courts have criticized federal prosecutors in other districts for applying what has been described as a "stunningly arbitrary" approach in seeking § 851 enhancements. *See United States v. Young*, 960 F. Supp. 2d 881 (N.D. Iowa 2013) (analyzing data and finding disparities in the use of § 851 enhancements);

---

for an incarcerated person, Liscano can reasonably expect to live for another 30 years in prison.

*United States v. Kupa*, 976 F. Supp. 2d 417, 420 (E.D.N.Y. 2013) ("[Section 851 notices] don't just tinker with sentencing outcomes; by doubling mandatory minimums and sometimes mandating life in prison, they produce the sentencing equivalent of a two-by-four to the forehead."). The United States Sentencing Commission similarly concluded just a few years ago that there are significant disparities in the use of § 851 notices based on geography, race, and whether the defendant proceeded to trial. *See* U.S. Sent'g Comm'n, Application and Impact of 21 U.S.C. § 851: Enhanced Penalties for Federal Drug Trafficking Offenders, at 21, 27-28, 33-34 (July 2018), https://www.ussc.gov/research/research-reports/application-and-impact-section-851-enhancements.

In any event, the § 851 notice that the prosecutor filed in Liscano's criminal case specified the prior convictions on which an enhanced penalty would be sought, but did not explicitly state which enhanced penalty Liscano would actually face—namely, life imprisonment. *See* R. 281. Liscano accordingly objected to the sufficiency of the notice at sentencing. *See* R. 368. After briefing and a hearing on the issue, the judge found that the notice complied with the minimum requirements under the statute and was not constitutionally infirm. R. 736-16 at 37:25-38-23. In his motion for compassionate release, Liscano raises the sufficiency issue again, pointing out that he told the judge he did not know before sentencing that the government was pursuing a life sentence against him. R. 736 at 17 (citing R. 736-16 at 15:25-16:5).

In response, the government correctly states that the sentencing judge already addressed this issue by denying Liscano's objection. But the government also states

that the specific § 851 notice filed against Liscano was not in a form generally used by prosecutors here in the Northern District of Illinois, and that the inclusion of more detail—particularly with respect to the life sentence—is a better practice, and the general practice in this district. R. 746 at 11. While subtle, this admission is important. Had the notice explicitly stated that the government intended to pursue an enhanced mandatory minimum sentence of life imprisonment, Liscano could have digested that information before trial, fully weighed his options, and possibly decided to plead guilty in hopes of securing a reduced sentence. After all, § 851 notices may be used as a tool to induce guilty pleas and the Court is not aware of a separate document presented to Liscano before trial that would have informed him of the government's intent to pursue a life sentence. To this point, Liscano expressed some confusion at sentencing regarding his potential term of imprisonment, telling the judge he believed after reading a draft of the agreement before trial that "the worst I would be looking at if they gave me enhancement would be 20 years, not a minimum of life." R. 736-16 at 15:25-16:5. And while Liscano's attorney told the judge that he had conversations with the prosecutor before trial about a life sentence, the attorney did not explicitly say whether he relayed that specific information to Liscano. *See id.* at 26:10-16. The bottom line is this: while the § 851 notice was sufficient as a matter of law, the government's admission years later that the notice should have been more forthcoming contributes to the extraordinary grounds for relief.

Liscano contends that a third government concession also warrants a reduced sentence. Citing the following exchange, Liscano specifically argues that the

prosecutor admitted at sentencing that the § 851 notice was filed in retaliation because Liscano exercised his constitutional right to trial instead of pleading guilty.

> **THE COURT**: Just so we can be clear on this, it was the government's position that if Mr. Liscano did not put the government to its proof, the government was not going to seek a Section 851 enhancement since it was not mentioned in the draft plea agreement provided to Mr. Liscano?
>
> **PROSECUTOR**: When those draft plea agreements were sent out, the 851 enhancements were not discussed in my office. After the fact when we narrowed down the defendants and we were deciding people going to trial, that's when we began discussing the 851 notices and at that point we made a decision that if people were to go to trial if they had the appropriate prior convictions, we would file the notices.
>
> **THE COURT**: So you didn't consider an 851 enhancement as to any defendant until after it became clear that some defendants would go to trial and others would plead guilty?
>
> **PROSECUTOR**: Correct, I mean yes. We ultimately made a decision that if defendants were going to go to trial and they had the appropriate prior felony convictions that we then would file the 851 notice.

R. 736 at 7 (citing R. 736-16 at 36:19-37:12).

The government argues in response that the law allows a prosecutor to grant concessions to obtain a guilty plea and that a defendant who rejects such concessions is not subject to an unconstitutional tax.[3] The government also admits that it would

---

[3] The government also points to the following exchange, which occurred immediately after the above-quoted conversation between the court and the prosecutor. "**The Court:** Whereas if a defendant did not go to trial, then you wouldn't file the 851 enhancement? **Prosecutor:** If they pled guilty, correct, yes, that's correct. **The Court:** Isn't it really the other way around, that you would not consider the 851 enhancement as to any defendant who did not put the government to its burden, but as to all defendants you would consider the 851 enhancement unless the defendant did not put the government to its burden? **Prosecutor**: Yes." R. 736-16 at 37:17-22.

not seek an enhanced sentence today regardless of whether Liscano exercised his right to trial or pled guilty. R. 746 at 12.

While the sentencing transcript is revealing, it's also true that prosecutors have broad discretion in determining when to prosecute, which charges to bring, and what sentences to recommend. *See United States v. Scott*, 631 F.3d 401, 407 (7th Cir. 2011) ("[O]ur case law embodies the long-settled principle that we safeguard prosecutorial discretion by shielding it from judicial review that either forces the prosecutor to act in a prescribed manner or penalizes the prosecutor for acting in his preferred manner."). Ultimately, the Court need not determine whether the prosecutor retaliated against Liscano because the first two government concessions are enough to show that extraordinary reasons exist in this case.

Indeed, Liscano continues to face the crushing penalty of life in prison even as the government now admits that his sentence—which it proactively sought through the § 851 notice—was erroneously imposed under *Mathis*. The government also admits that the notice should have informed Liscano of the actual enhancement sought, and that the version of the notice used by the prosecutor was inconsistent with the government's own practices here in the Northern District. Adding to this injustice is that Liscano was among the least culpable members of the eleven-person conspiracy, and yet he was the only member to receive an above-guideline sentence and is only one of two still incarcerated to this day. *See* R. 749. Almost all other members of the conspiracy were released years ago. *Id.*

15

The government argues that neither of its concessions, considered individually or in combination, constitute an extraordinary reason warranting a sentence reduction. According to the government, Liscano's challenges are not individualized because he relies on grounds applicable to a broad class of offenders sentenced to enhanced penalties based on prior convictions later determined not to qualify as predicates under § 841(b). The government further argues that changes in the law occur with some frequency, and points out that the Seventh Circuit recently held that non-retroactive changes to a statute cannot establish an extraordinary and compelling reason for release under § 3582(c)(1)(A)(i). *See United States v. Thacker*, 4 F.4th 569, 574 (7th Cir. 2021) ("[T]here is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute.").

The government is largely correct. Changes in the law do occur with some frequency, and there are other defendants whose sentences were enhanced based on prior convictions that no longer qualify as predicates under *Mathis*.[4] But that does not preclude a finding that Liscano's particular circumstances are extraordinary. Unlike the vast majority of criminal defendants, Liscano was sentenced to life imprisonment. According to the U.S. Sentencing Commission, "life imprisonment

---

[4] The government is also correct that under *Thacker* non-retroactive changes made by Congress to a statute cannot supply an extraordinary and compelling reason for a sentence reduction. However, the Court is not considering the non-retroactive changes made under the First Step Act to 21 U.S.C. § 841(b)(1)(A) in finding that extraordinary and compelling reasons exist here. Put differently, this case does not present the separation-of-powers issue that animated the *Thacker* decision.

sentences are rare in the federal criminal justice system" as "[v]irtually all offenders convicted of a federal crime are released from prison eventually and return to society." *See* U.S. Sent'g Comm'n, Life Sentences in the Federal Criminal Justice System (2015), https://www.ussc.gov/research/research-publications/life-sentences-federal-criminal-justice-system. Several data points make this clear. For example, in fiscal year 2005 (the year Liscano was sentenced), of the 72,000 federal sentences imposed, only 250 or so involved a life sentence. *Id.* at 4; U.S. Sent'g Comm'n, 2005 Sourcebook of Federal Sentencing Statistics, Introduction (2005), https://www.ussc.gov/research/sourcebook/archive/sourcebook-2005. Similarly, in 2016, the percentage of offenders convicted of an offense carrying a drug mandatory minimum penalty of life imprisonment was just .4 percent. *See* U.S. Sent'g Comm'n, Mandatory Minimum Penalties For Drug Offenses in the Federal Criminal Justice System, at 23 (2017), https://www.ussc.gov/research/research-reports/mandatory-minimum-penalties-drug-offenses-federal-system. And based on the latest data available, federal prisoners who have received a life sentence for any crime account for only 2.7 percent of all prisoners in the entire BOP system. *See* Federal Bureau of Prisons, Sentences Imposed, https://www.bop.gov/about/statistics/statistics_inmate_sentences.jsp (last accessed Sept. 23, 2021). These figures can undoubtedly be construed in several ways, but none deny the fact that Liscano's specific situation does not apply to a broad class of offenders. Life sentences are in a category of their own. Life sentences that the government admits were erroneously imposed are even more so.

The Court has served as a federal judge for nearly 9 years, previously was a criminal defense attorney for 20 years, and before that served as a federal prosecutor

for more than 13 years, and has never seen a set of facts that resemble those involved here. Between the predicate offenses involving such minimal amounts of drugs, the admission that the offenses no longer support a life sentence, and the recognition that the § 851 notice should have but did not inform Liscano of the government's intent to seek a term of life imprisonment, this case—by definition—is "beyond what is usual, customary, regular, or customary."

So, this case is certainly an uncommon one. Yet there's another factor that weighs in Liscano's favor: his rehabilitation efforts in the nearly two decades since being incarcerated. *See United States v. Williams*, 2020 WL 6940788, at *4 (N.D. Ill. Nov. 25, 2020) (considering an inmate's self-development along with other factors in determining whether extraordinary reasons exist); *United States v. Reyes*, 2020 WL 1663129, at *3 (N.D. Ill. Apr. 3, 2020) (same). Liscano has completed hundreds of hours of education and vocational training, and has received dozens of professional certificates while in prison. R. 736 at 29-30; R. 736-8; R. 736-9. He has built a skill set in electrical and carpentry work, and one of his correctional counselors wrote in a 2018 letter of recommendation that his "hard work ethic and positive attitude will continue to guide him in being a productive citizen in society" where he will be able to further "use the [skills] he has acquired while being incarcerated." R. 736-7. A supervisor likewise wrote in a performance review as recent as March 2021 that Liscano works "at or above my expectations, does work tasks without being told to do so, works in a safe manner, and is a positive example to other inmates." R. 736-11. The supervisor also noted that prison staff trust Liscano to operate certain electrical

tools and that he requires "little supervision." *Id*. Compared to his early days as a high school dropout, *see* R. 748 at 32, Liscano's rehabilitation efforts show that he is committed to living a law-abiding life should he be given that chance.

In sum, Liscano has supplied extraordinary reasons in support of a sentence reduction. And lest there be any doubt, he has provided a compelling reason too. *See* 18 U.S.C. § 3582(c)(1)(A)(i) (requiring "extraordinary and compelling" reason to justify reduction). "Compelling" means "demanding attention," and a lifetime sentence that the government now admits is legally flawed has no doubt caught this Court's attention. *See* Compelling, Merriam-Webster (def. 2), https://www.merriam-webster.com/dictionary/compelling. Liscano has accordingly met his heavy burden under the first prong of the compassionate release analysis.

## II.   Sentencing Factors under 18 U.S.C. § 3553(a)

The Court turns next to whether a sentence reduction is consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *United States v. Saunders*, 986 F.3d 1076, 1078 (7th Cir. 2021) (courts have "broad discretion" in weighing § 3553(a) factors). The factors that are applicable here include: the nature and circumstances of the offense; defendant's history and characteristics; the need for the sentence to reflect the seriousness of the offense, respect for the law, provide just punishment, deter criminal conduct, and protect the public; and the need to avoid sentencing disparities. *United States v. Dawson*, 980 F.3d 1156, 1162 (7th Cir. 2020). The government did

not address the § 3553(a) factors in its opposition to Liscano's motion. The Court nevertheless discusses them in turn.

**Nature and circumstances of the offense**. There is no doubt that conspiring to distribute controlled substances is a serious offense. Liscano was responsible for 12-13 kilograms of cocaine and the evidence at trial showed that he tried to help Corral evade police detection. Such aggravating circumstances warrant a meaningful sentence, and Liscano has already served 18 years in prison. But even so, and as mentioned above, the Court cannot ignore the fact that Liscano's actions related to conspiracy were far less compared to his co-conspirators. To start, Abraham Estremera and Raphael Pena were both responsible for more than 150 kilograms of cocaine, and they were both in possession of a firearm when they were arrested. *Bustamante*, 493 F.3d at 883-84. Pena also maintained a business ledger to track the financial activities of the Latin Kings street gang, *id*. at 884, and testimony suggested that Estremera was tied to at least one homicide, *see* R. 736-18 at 69:24-73:25. On top of that, other members of the conspiracy, including Jose Hernandez and Jose Oliva, stipulated in their plea agreements that they possessed a firearm as part their Corral-related activities. *See United States v. Hernandez*, 02-cr-00719-15, Dkt. 247 at 4 (N.D. Ill. May 2, 2003); *United States v. Oliva*, 02-cr-00719-13, Dkt. 245 at 4 (N.D. Ill. May 2, 2003). No similar stipulation or allegation appears in the draft plea agreement that was presented to Liscano before trial or in his presentence report prepared by the U.S. Probation Office. *See* R. 736-3; R. 748. Moreover, the sentencing court, in deciding Liscano's § 2255 motion, noted that Corral had previously provided

20

testimony suggesting that Liscano: (1) did not work for Corral in "any formal capacity," (2) was not aware of Corral's other customers, (3) did not know where Corral stored his cocaine, and (4) did not agree to help Corral sell drugs to customers other than his own. *See Liscano*, 2011 WL 2938103, at *3-4. Corral also testified that his drug operation could have continued without Liscano's assistance. *Id*. Taken together, these circumstances show that while Liscano's crime of conviction was serious and worthy of punishment, he was neither the most dangerous or culpable conspirator. The first factor therefore supports a reduction in Liscano's life sentence.

**Liscano's history and characteristics**. This factor is mixed but ultimately favors Liscano. On the aggravating side, he had a criminal history category of VI at the time of sentencing. In addition to the drug crimes that landed him in prison, Liscano's criminal record includes burglary, unlawful use of a weapon by a felon, and driving under the influence. *See* 748 ¶¶ 342, 369, 410-427. While a criminal history category of VI is the highest category allowed, the guidelines can be a very imprecise measure of the seriousness of prior criminal conduct. In hundreds of sentencings the Court has been involved in as a judge, prosecutor, and defense attorney, there have been Category VI defendants who are beyond dangerous and Category VI defendants who are not. Criminal history point calculations vary widely, and different crimes are often assigned the same number of points. As a Category VI defendant, Liscano was on the lower end of dangerousness. And importantly, he has made significant strides since receiving his sentence, which may be considered in assessing his personal characteristics. *See United States v. Shaw*, 957 F.3d 734, 741 (7th Cir. 2020) ("[A]

district court may consider evidence of a defendant's post-sentencing rehabilitation when deciding whether to impose a reduced sentence under the First Step Act") (citation omitted). As explained, Liscano has completed dozens of educational courses while incarcerated. In 2009, after completing 350 hours of vocational programs, Liscano received his certificate of completion for General Carpentry and Residential Electrical work. R. 736-9 at 6. Continuing that success in 2016, Liscano earned a certificate for repairing vehicle air conditioning refrigerant and recycling equipment, and separately earned a certificate of completion for VT Building Trades through Century College. *Id*. at 7, 12. He now works full time at the prison. R. 736 at 30. The Court also takes note of the positive comments that correctional officials have made about Liscano in recent years. *See supra* at 18 (citing R. 736-7; R 736-11). Liscano's course load and full-time work schedule demonstrate to the Court that he wants a fresh start in life and is prepared for post-release success, signs of progress that other courts have found persuasive in reducing a defendant's sentence. *See, e.g., White*, 2021 WL 3418854, at *5 ("The steps [Defendant] has taken towards rehabilitation support release."). It would have been entirely rational for a defendant slated to die in prison to take no steps to improve himself for post-release adjustment. Many would simply say, "what's the point?" To Liscano's credit, he has done exactly the opposite.

**Seriousness of the offense, respect for the law, just punishment, protect the public, and deter future criminal conduct.** While this Court strongly believes that sentences should deter future criminal conduct, requiring Liscano to spend the remainder of his life in prison is unlikely to have that effect. The

First Step Act amended the recidivist provision of 21 § 841(b)(1)(A) by reducing the the mandatory minimum life sentence and narrowing the category of predicate offenses that trigger enhanced penalties. Under current law, a defendant with two or more prior convictions for a "serious drug felony" (as opposed to a "felony drug conviction") is subject to a mandatory minimum sentence of 25 years—a remarkable reduction in time compared to the old penalty. More than that, though, the amendment makes it difficult to see why requiring Liscano to serve the remainder of his current sentence would generally or specifically deter future criminal conduct since a life sentence is not even available under that provision of the statute today.[5]

As for seriousness of the offense, respect for the law, and providing just punishment, Liscano has served around 226 months (18 years) of his sentence—an amount that is in line with his guidelines range at the time of sentencing (210-262 months). This is not a situation where his time in prison is being reduced after just a few years. The Court also notes that in 2005—the year Liscano was sentenced—the average federal sentence for murder was around 19 years. *See* U.S. Sent'g Comm'n, 2005 Sourcebook of Federal Sentencing Statistics, tbl. 13 (2005), https://www.ussc.gov/research/sourcebook/archive/sourcebook-2005. While Liscano's crime was serious, it was far less serious than murder. And as Judge Feinerman

---

[5] While the First Step Act reduced the mandatory minimum life sentence to a 25-year sentence, a mandatory minimum penalty of life imprisonment is still available under the statute if a person commits an offense after a serious drug felony conviction has become final, and death or serious bodily injury was involved. *See* 21 U.S.C. § 851(b)(1)(A). There are no allegations tying Liscano's offenses to death or serious bodily injury.

correctly observed in reducing a defendant's 106½-year sentence, "if a 19-year sentence for murder serves to reflect the seriousness of that offense, to promote respect for the law, [and] to provide just punishment for the offense," then an 18-year sentence does the same for conspiring to distribute cocaine. *See Rollins*, 2021 WL 1020998, at *7.

Finally, as to the need to protect the public, Liscano has taken advantage of the resources and rehabilitative opportunities available to him in prison. His prison record suggests that he would not pose a danger to the public if released, and any danger associated with releasing him will be mitigated by the five years of supervised release that was part of his original sentence. *See* R. 519 at 2; *see also* U.S.S.G § 1B1.13 (requiring consideration of whether the defendant is a danger to the public). The five-year period provides Liscano with the means to be successful in his transition into society while the U.S. Probation Office works to ensure that Liscano abides by the law and the terms of his release.

**Avoiding unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.** This factor strongly counsels in favor of a sentence reduction. Even though Liscano was less culpable than other members of the conspiracy with similar guideline ranges, he is the only member who received an above-guideline sentence.[6] And, he is one of only

---

[6] As stated, Liscano's range was 210-262 months, and he was sentenced to life imprisonment. Jose Oliva's range was 262-327 months, and he was sentenced to 104 months; Jose Aguirre's range was 188-235 months, and he was sentenced to 94 months; Jose X. Hernandez's range was 188-235 months, and he was sentenced to 94

24

two members who remain incarcerated today.[7] Corral, the conspiracy's undisputed ringleader, testified against Liscano and was released from prison many years ago, as were Miguel Bustamente, David Bustamente, John Gonzalez, Jose X. Hernandez, Jose Aguirre, and Jose Oliva, many of whom were responsible for greater amounts of cocaine than Liscano. *See* R. 749. Viewed this way, Liscano's lifetime sentence creates a disparity that is as pronounced as it is unwarranted. *See Conley*, 2021 WL 825669, at *5 (reducing sentence because defendant's sentence was "grossly disproportional" compared to co-defendants).

Looking more broadly, Liscano's sentence is also uniquely excessive compared to the sentence he would likely receive today. As mentioned, the First Step Act reduced drug mandatory minimum penalties and limited the range of predicate offenses that support enhanced sentences under 21 U.S.C. § 841(b)(1)(A). This statutory change "reflects a substantially different view by Congress about how to punish violations" of 841(b)(1)(A). *United States v. Black*, 999 F.3d 1071, 1076 (7th Cir. 2021) (vacating denial of compassionate release motion because district court

---

months; and John Gonzalez's range was 188-235 months, and he was sentenced to 188 months. *See* R. 749.

[7] The other defendant who remains incarcerated is Abraham Estremera, who was sentenced to life imprisonment. As mentioned, Estremera was responsible for 150 kilograms of cocaine, and the sentencing judge heard testimony tying him to at least one homicide. *See* R. 736-18 at 69:24-73:25. Liscano's original presentence report contained information stating that Liscano was also tied to a homicide. *See* R. 736-18 at 64:15-65:12. However, the sentencing judge specifically ordered that information be stricken from the presentence report because he had "no basis" to believe the information by a preponderance of the evidence. *See id.* He did not do the same for Estremera. *See id.* at 73:21-25.

failed to weigh statutory change to 18 U.S.C. § 924(c) when applying the § 3553(a) factors). Under the now revised and narrower version of the statute, an enhanced sentence is triggered if the defendant has previously been convicted of a "serious drug felony," which is an offense described in 18 U.S.C. 924(e)(2) for which the offender "(a) served a term of imprisonment of more than 12 months, and (b) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57). The predicate offenses relied on by the government in Liscano's case did not involve him serving terms of imprisonment of more than 12 months; according to his presentence report, Liscano served four months for his baggy conviction and three months for his residue conviction. *See* R. 748 ¶¶ 310-311, 385-386. So, if sentenced today, Liscano would likely be subject to a mandatory minimum sentence of only 10 years, a striking difference from life imprisonment. *See* 21 U.S.C. § 841(b)(1)(A) (mandatory minimum sentence of 10 years for non-recidivist offender whose conduct did not result in death or serious bodily injury).

Of course, the disparities surrounding Liscano's sentence do not bear on the question whether there are "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A)(i). *See Thacker*, 4 F.4th at 574. But they are unquestionably relevant under § 3553(a)(6), *see id.* at 575, and strongly support Liscano's motion here. *See Rollins*, 2021 WL 1020998, at *8.

**Proposed release plan**. The Court also considers Liscano's proposed release plan. He intends to live with his youngest sister, who owns a home with her husband and has

26

prepared an extra bedroom for her brother. This support system is likely to reduce the risk that Liscano will reoffend upon his release. *See United States v. Warner*, 792 F.3d 847, 864 (7th Cir. 2015). Liscano also benefits from having a friend, Jose Cazares, who has offered to help him secure employment in the electrical profession. The most notable piece of Liscano's release plan, however, is his relationship with his teenage daughter. Liscano was arrested at the hospital the day after she was born. He has not held her as a free man since that fateful day. But despite his sentence, he has continued to be a father figure in her life, helping her with homework over the phone and sending her drawings and hand-made pottery. In a recent letter to the Court, Liscano wrote that he wants "to provide safety, security and stability for [his daughter] and for the children in my community who may be heading in the wrong direction." R. 736-12. Inmates facing a lifetime of incarceration are almost never given a second chance to provide for their children outside the walls of prison. The Court's most sincere hope is that, upon release, Liscano continues to care for his daughter, and that he recognizes the rare opportunity he has been afforded.

**Remaining factors:** A few remaining § 3553(a) factors are not as relevant to this motion as the others just discussed, but they still warrant a brief discussion. For example, § 3553(a)(2)(D) considers the need for the sentence "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." As mentioned, Liscano has taken advantage of the resources and rehabilitative opportunities available to him in prison. Regarding medical care, Liscano's medical records do not seem to reflect any conditions that increase his risk of severe illness from COVID-19 or otherwise counsel in favor of a reduction in his sentence.

The seventh factor is "the need to provide restitution to any victims of the offense." *Id*. § 3553(a)(7). Liscano's sentence did not require him to pay restitution, but it did impose a fine of $25,000. *See* R. 519. To the extent Liscano has not yet paid that fine in full, there is little question that he would be better able to do so outside of prison, gainfully employed, than if imprisoned for the remainder of his life.

*     *     *     *     *

In the end, Section 3553(a) requires a court, upon considering the various factors, to impose a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of a criminal sentence set forth in § 3553(a)(2). Under the facts of this case, the Court concludes that Liscano's life sentence is far greater than necessary and instead finds that a sentence of 226 months (which equates to time served) is sufficient but no more than necessary. As mentioned, this reduction means that Liscano's revised sentence is in line with his original guidelines range of 210-262 months.

While this Court is hesitant to interfere with another judge's initial sentence, the sentencing judge's hands were tied in this case, forbidding him to exercise discretion. What is more, the particular circumstances surrounding Liscano's term of life imprisonment justify the relief he now seeks. No one can reasonably argue that Liscano—whose predicate offenses included possessing a baggy of cocaine at the age of 18 and mere residue a few years later—deserves the same life sentence as Joaquin "El Chapo" Guzman. In the same way, no reasonable person can take the position that requiring Liscano to spend the remainder

of his life incarcerated is a worthy endeavor that will benefit society, keep the public safe, or advance our notions of justice.

That said, today's decision should not be construed as an invitation to open the floodgates. Relief under Section 3582(c)(1)(A) of the First Step Act is usually unavailable, reserved only for narrow circumstances. This unique case does not change that fact. Nor should this decision be interpreted as a critique of the government. Nearly every indication in the record suggests that the prosecutors on this case have acted in good faith. The short of the matter is that the circumstances surrounding Liscano's sentence simply cry out for a result different than a lifetime behind bars.

## Conclusion

Because Liscano has met his burden of showing that there are "extraordinary and compelling reasons" supporting a sentence reduction, and because such a reduction is consistent with the § 3553(a) factors, this Court reduces Liscano's lifetime sentence to time served. His motion for compassionate release, R. 736, is accordingly granted. An amended judgment and commitment order will follow shortly. All other aspects of Liscano's sentence remain unchanged, including, most importantly, his five years of supervised release. The government, defense counsel, and/or the Probation Office are invited to move the Court to make any appropriate modifications to the conditions of Liscano's supervised release.

This order is stayed for seven days for the verification of Liscano's residence, to finalize his release plan, to make appropriate travel arrangements, and to ensure

Liscano's safe release. Defense counsel is free to make a request to lift this stay if these conditions are already addressed.

ENTERED:

_Thomas M. Durkin_

_____

Honorable Thomas M. Durkin
United States District Judge

Dated: September 27, 2021